## STATE EX REL. BISHOP, ATTY. GEN., *v.* STATE BOARD OF CORRECTIONS, ET AL.

STATE PRISONERS—BOARD OF CORRECTIONS—CONSTITUTIONAL LAW.

Section 2251, Rev. St. 1898, providing for a board of corrections, whose duty it shall be to allow certain prisoners to go upon parol, and the rules adopted in pursuance of that section, are void, because they, in effect, confer the power to commute a sentence, and are therefore in conflict with section 12, art. 7, of the state constitution, which creates a board of pardons, with the exclusive right to commute punishment and grant pardons; and it makes no difference that, in case of parol by the board of corrections, the commutation is conditional upon the good behavior of the paroled.

(Decided April 16, 1898.)

Application for writ of prohibition by the state, on the relation of A. C. Bishop, attorney general, against the state board of corrections and its members. *Granted.*

*A. C. Bishop, Atty. Gen., Benner X. Smith, Asst. Atty. Gen.,* and *C. S. Varitan,* for plaintiff.

*Powers, Straup & Lippman,* and *A. V. Taylor,* for defendants.

No briefs were filed.

ZANE, C. J.:

This is an application for a writ, upon the information of the attorney general, prohibiting the defendants from paroling certain convicts serving terms in the state prison. It is alleged by the plaintiff that the defendants are about to release the prisoners named, in pursuance of the following sections of the revised statutes of this state: "The board shall have power to establish rules and regulations, under which any prisoner, who is now or hereafter may be imprisoned under a sentence other than for murder in the first or second degree, and who may have served a minimum term provided by law for the crime for which he shall have been convicted (and who shall not have previously been convicted of felony and served a term in a penal institution) and any prisoner who is now or hereafter may be imprisoned under a sentence for murder in the first or second degree, and who has now, or hereafter shall have served, under said sentence twenty-five full years, may be allowed to go upon parole outside of the prison buildings and their inclosures, but to remain, while on parole, in the legal custody and under the control of the board, subject at any time to be taken back within the institution,"—and the following rules adopted in pursuance of the statute: "Know all men by these presents, that the state board of corrections of the state of Utah, desiring to test the ability of ———, a prisoner of the state prison to re-

frain from crime and live an honorable life, do, by virtue
of the authority conferred upon them by law, hereby
parole the said ————, and allow him to go on parole
outside the buildings and inclosure of said institution,
but not outside the state of Utah,—subject, however, to
the following rules and regulations: (1) He shall pro-
ceed at once to the place of employment provided, for
him, viz. ————, and there remain, if practicable, for
a period of at least six months from this date. (2) In
case he finds it desirable to change his employ-
ment or residence, he shall first obtain the written con-
sent of the warden of said state prison. (3) He shall, on
the first day of each month, until his final release accord-
ing to law, forward by mail to the warden of said prison
a report of himself, stating whether he has been constant-
ly under pay during the last month, and if not, why not,
and how much he has earned, and how much he has ex-
pended, together with a general statement of his sur-
roundings and prospects. (4) He shall in all respects
conduct himself honestly, avoid evil associations, obey
the law, and abstain from the use of intoxicating liquors.
(5) As soon as possible after reaching his destination, he
shall report to ————, show him his parole, and at
once enter upon the employment provided for him. (6)
He shall, while on parole, remain in legal custody, and
under the control of said board. (7) He shall be liable
to be retaken, and again confined within the inclosure of
said institution, for any reason that shall be satisfactory
to the board of corrections, and at their sole discretion."
For confinement within prison walls, the parole, if law-
ful, substitutes the restraints of the promise which it
exacts, and the liability to be rearrested and returned to
prison in case the promise is violated. The one is not
only legal imprisonment, but actual imprisonment as

well; the other is simply constructive and legal restraint.
The first consists of confinement in the penitentiary; the
latter allows the convict to go at large, upon his promise
that he will report on the first day of each month; that
he will avoid evil associations, obey the law, conduct him-
self honestly; and that he will be industrious, and tem-
perate as to the use of intoxicating drinks.    The parole
leaves him liable to be retaken into actual custody, upon
a violation of its conditions.    The restrictions, inconven-
iences, and exactions which the parole imposes upon the
convict while at large, and his liability again to be taken
into custody and actual imprisonment, and the humilia-
tion and disgrace that attend such a life, constitute pun-
ishment.    While it is much less in degree than actual
confinement in a cell, or within prison walls, it is never-
theless legal punishment.    The parole substitutes lesser
punishment for that imposed by the sentence.    It changes
one punishment known to the law for another and differ-
ent punishment, also known to the law.    In other words,
it substitutes a less grade of punishment for that inflicted
by the sentence pronounced upon conviction.    While the
time of the lesser punishment depends upon the observ-
ance of the conditions imposed by the parole, the lesser
punishment continues until those conditions are violated,
or until the end of the term as fixed by the sentence.    The
question to be determined is whether the law purporting
to authorize the state board of corrections to parole per-
sons sentenced to impriosment in the state prison vio-
lates section 12, art. 7, of the state constitution, which
declares:    "Until otherwise provided by law, the govern-
or, justices of the supreme court, and attorney general
shall constitute a board of pardons, a majority of whom,
including the governor, upon such conditions, and with
such limitations and restrictions as they deem proper,

may remit fines and forfeitures, commute punishments, and grant pardons after conviction, in all cases except treason and impeachments, subject to such regulations as may be provided by law, relative to the manner of applying for pardons; but no fine or forfeiture shall be remitted and no commutation or pardon granted, except after a full hearing before the board, in open session, after previous notice of the time and place of such hearing has been given." This provision gives to the board of pardons the exclusive right to "commute punishment and gant pardons." In effect, the parole substitutes the punishment imposed by it for that imposed by the sentence. The actual punishment is changed. One punishment known to the law is changed to another punishment known to the law, and this is commutation. But it may be said that the punishment imposed by the parole under the statute, if valid, is conditional. It is true that the continuance of the substituted punishment depends upon certain conditions,—the observance of the rules of conduct prescribed by the parole, and the reports by the prisoner exacted by its terms. But whether the commutation is unconditional or conditional, as to time, it can make no difference. In either case the power to make the communtation is vested in the board of pardons. Rapalje and Lawrence, in their Law Dictionary, define "commutation" to be "the substitution of a lesser grade of punishment for that inflicted by the sentence pronounced upon conviction." Again, communtation has been defined to be "the change of a punishment to which a person has been condemned, to a less severe one." And it is added that "this can be granted only by the authority in which the pardoning power resides." 6 Am. & Eng. Enc. Law (2d Ed.) p. 356. We hold that the statute quoted, and the rules adopted in pursuance of it,

are absolutely void, because they are contrary to the provision of the constitution also quoted. The writ of prohibition is granted as prayed.

BARTCH, J., concurs.