CARDISCO v. DAVIS, Warden of Utah State Prison.
EDWARDS v. SAME.

Nos. 5853, 5854. Decided January 4, 1937. (64 P. [2d] 216.)

*William L. Beezley,* of Salt Lake City, for plaintiffs.

*Joseph Chez,* Attorney General, and *Grover A. Giles,* of Salt Lake City, for defendant.

MOFFAT, Justice.

Upon petitions filed by Mike Cardisco and Harry Edwards, writs of habeas corpus were issued directing R. E. Davis, Warden of the Utah State Prison, to appear before this court with the prisoners at a time specified. The orders contained in the writs were complied with, and at the date specified the warden filed his return to each of the writs.

Upon stipulation of the parties the cases were consolidated for presentation and argument. Each case raises the same questions of law. For the purpose of this opinion what is said herein applies to both cases unless otherwise indicated.

Mike Cardisco alleges that he is unlawfully restrained of his liberty by the Warden of the Utah State Prison by reason of the fact that he has earned nine months' reduction of time under the "good behavior" statute (Rev. St. 1933, 67-0-10, 67-0-11), and that, when the "good conduct time" is deducted from the maximum time fixed by the trial judge under the "indeterminate sentence" statute (Rev. St. 1933, 105-36-20), his term has expired and he is entitled to his release.

Except for differences of offense charged, duration and dates of sentence and amount of good conduct time claimed to have been earned, the case of Harry Edwards is identical; that is, the same questions of law are presented. Without subdivision into elements of analysis of the legal problem, there is but one question for consideration, viz.: Has the State Board of Pardons entire control over the time a prisoner sentenced under the indeterminate sentence law shall serve under the maximum fixed by law? In another form, the question may be stated thus: Is it mandatory upon the State Board of Pardons to apply to each convict sentenced to a term less than life the "good conduct time" allowance, if the prisoner has not been guilty of a breach of any of the rules of discipline of the prison during the period of service under the sentence? This last question unfortunately contains an assumption as to the status of the so-called "good conduct time" statute not imposed by the first question.

Counsel for the Warden submits both questions as one connected by the alternative "or," while counsel for petitioners subdivide the matter into five propositions for which they contend, viz.: (1) There is no inconsistency between the indeterminate sentence statute provisions, and the good conduct time deduction statute; (2) that, without a record being kept and a forfeiture of good conduct time, petitioners are entitled to the allowance which the Warden cannot forfeit; (3) that the rule of statutory construction is as follows: "When the provisions of a statute are susceptible of two constructions, one of which gives effect to all of its provisions, and one of which does not, that construction should apply which permits all of its provisions to stand in force"; (4) that the rule of statutory construction just quoted applies to petitioners' cases; (5) that the statute providing for allowance for good behavior, or the so-called "merit system," whereby prisoners are allowed credit for "good time," is mandatory upon the Warden and the State Board of Pardons.

We are of the opinion that the State Board of Pardons has the jurisdiction and power to fix and determine the time a person shall serve when sentenced under the indeterminate sentence law at any period equal to or less than the maximum penalty provided by law. As thus stated, there is but one question for discussion. In arriving at this conclusion, we are conscious that the disciplinary and administrative policies of the Board of Corrections, the Warden of the State Prison, and the State Board of Pardons, is of the utmost importance. By the terms of the indeterminate sentence law the Legislature intended to interpret and make more effective the provisions of the State Constitution to carry forward as far as possible the constitutional powers placed in the hands of the State Board of Pardons relating to the administrative details as to the remission of fines and forfeitures, the commutation of punishments, and the granting of pardons after convictions. In territorial days the laws of Congress relating to Utah provided that the Governor "may grant pardons and reprieves, and remit fines and forfeitures, for offences against the laws of the Territory." Comp. Laws Utah 1888, vol. 1, p. 51, § 1841. Upon the adoption of the State Constitution this power was vested in the Board of Pardons, a body created by the State Constitution. Const. Utah, art. 7, § 12. Since the adoption of the State Constitution, the ideas and attitude of those concerned with prison administration as to the purposes of incarceration, the rules and disciplinary regulations, the methods for reforming prisoners, and what constitutes paying the penalties imposed after convictions have materially changed. The limitations and restrictions adopted by the Board of Pardons relating to matters of supervision, parole, and reformation of those convicted of crime have acquired an enlarged and different meaning. The ideas of "retributive justice and vindictive punishment" have been modified. Rehabilitation and reformation have acquired greater emphasis. The powers vested in the Board of Pardons have contributed to make this possible. Courts should

not interfere with those upon whom these powers have been conferred nor with the discharge of the duties imposed, unless it clearly appears that they have exceeded the authority conferred. The framers of the Constitution and the people who adopted it saw fit to vest questions of judgment as to reformation, rehabilitation, and fitness to carry and discharge social responsibilities following conviction and incarceration of prisoners in the State Board of Pardons. Prison discipline is for the Warden of the State Prison and the Board of Corrections. Treatment of a prisoner is an individual problem, and should be more responsive to the particular case. Handled in such manner, the work may be more effective than can be provided by general legislative action. Each prisoner is an individual problem notwithstanding the necessity of general administrative rules.

Article 7, § 12, of the Constitution of Utah, among other things, provides:

"Until otherwise provided by law, the Governor, Justices of the Supreme Court and Attorney-General shall constitute a Board of Pardons, a majority of whom, including the Governor, upon such conditions, and with such limitations and restrictions as they deem proper, may remit fines and forfeitures, commute punishments, and grant pardons after convictions, in all cases except treason and impeachments, subject to such regulations as may be provided by law, relative to the manner of applying for pardons."

The power to parole prisoners is included within the power to "remit fines and forfeitures, commute punishments, and grant pardons." No reference is made in the Constitution of Utah to parole. The word "parole" is not found in the Constitution.

Section 67-0-7, R. S. Utah 1933, in part, reads:

"The board of pardons may permit any prisoner who is now or may hereafter be imprisoned in the state prison, or any county jail, to go on parole outside of the prison buildings and other inclosures."

And section 67-0-8, R. S. Utah 1933, relating also to the status of a parolee and the power of the board to control or retake and reimprison one on parole, provides:

"A prisoner while on parole shall remain in the legal custody and under the control of the warden, or the sheriff of the county from which the prisoner was paroled, as the case may be, and the board of pardons; and shall be subject at any time to be taken back to the institution from which he was paroled. Full power to retake and reimprison any convict upon parole is hereby conferred upon the board, whose written order, certified by its secretary, shall be a sufficient warrant for all officers authorized to make arrests, or other persons named therein, to return to actual custody any such prisoner."

The two sections of the statutes just referred to relating to parole are within the constitutional grant of power to remit fines and forfeitures, commute sentences, and pardon prisoners. Under the powers vested by the Constitution of Utah in the State Board of Pardons, the board could parole prisoners or refuse to do so and exercise the other supervisory powers over terms of imprisonment after conviction, commutation, pardon, and parole had the sections not been enacted. The procedural parts of the sections of the statute relating to the Board of Pardons are in no way repugnant to the Constitution.

It is provided by sections 67-0-10 and 67-0-11, R. S. Utah 1933, that:

67-0-10. "The board of pardons may extend to each convict sentenced for any period less than life who shall not have been guilty of a breach of the rules of discipline of the prison a reduction of the period of sentence as hereinafter provided; and when the full term of imprisonment for which such convict shall have been sentenced shall be diminished by his good conduct so that his term of imprisonment has thereby expired, the warden shall immediately furnish the board of pardons a certificate stating the length of time his term of imprisonment has been so diminished, and no objections appearing to the board, the convict shall be released."

67-0-11. "The hereinafter specified deductions shall be allowed to convicts for good conduct:

"(1) From a term of sentence of three months, fifteen days; from a term of six months, thirty days; from a term of one year, two calendar

months; thus, a one-year convict shall be entitled to a discharge at the expiration of ten months.

"(2)   If the term is for any time greater than one year, the service for the second year or portion thereof shall begin at the expiration of ten months, which shall stand for a service of one year.   On the second year the convict shall be entitled to a deduction of three calendar months; thus, a service of one year and seven months shall be sufficient for a term of two years.

"(3)   The service of a third year, or portion thereof, shall begin at the expiration of one year and seven months; four calendar months shall be allowed on said third year; thus, a service of two years and three months shall be sufficient for a term of three years.

"(4)   The service of the fourth year, or portion thereof, shall begin at the expiration of two years and three months, and on the fourth year five months shall be allowed; thus, a service of two years and ten months shall be sufficient for a term of four years.

"(5)   The service of the fifth year, or portion thereof, shall begin at the expiration of two years and ten months, and from the fifth year there shall be a deduction of six calendar months; thus, a service of three years and four months shall be sufficient for a term of five years.

"(6)   For all time in excess of five years there shall be a deduction of one-half of such time.   In all terms of sentence terminating between those hereinbefore specified, the deduction shall be proportionate."

The meaning of the statutes as changed since the adoption of the Constitution provided in the foregoing two sections is:

"The board of pardons *may* extend to each convict sentenced for any period less than life who shall not have been guilty of a breach of discipline of the prison a reduction of the period of sentence as hereinafter provided;   *   *   *

"From a term of sentence of three months, fifteen days" etc. (Italics added.)

The introductory clause of section 67-0-11 is not in harmony with the first sentence of section 67-0-10, above quoted. "The board of pardons *may* extend" does not temperately keep company with "The hereinafter specified deductions *shall* be allowed." (Italics added.)   For those who may be interested in tracing the history of the foregoing sections

the following references are collected: U. S. Stats. at Large, vol. 14, c. 146, p. 424, approved March 2, 1867; U. S. Stats. at Large, vol. 16, c. 128, p. 151, approved June 14, 1870; R. S. U. S. §§ 5543, 5544; U. S. Stats. at Large, vol. 18, c. 145, p. 479, § 1, approved March 3, 1875 (see 18 U. S. C. A. § 710) ; Laws Utah 1880, c. 11, §§ 1, 2, 3, 4, 5, and 6, p. 12, approved February 18, 1880; Laws of Utah 1886, approved March 11, 1886, c. 6, §§ 1 to 7; Comp. Laws Utah 1888, §§ 5267 to 5272, inclusive; R. S. Utah 1898, §§ 2246 to 2249; *State ex rel. Bishop, Attorney General,* v. *State Board of Corrections,* 16 Utah 478, 52 P. 1090; Laws Utah 1899, chap. 39. Under the provisions of the earlier laws it was provided that "Each convict" for good behavior *shall* be entitled to a reduction of the period of sentence, while it is now provided, section 67-0-10, the Board of Pardons *may* for good behavior grant a reduction of sentence, parole or pardon the prisoner. It is then provided that for a violation of the rules the convict shall be liable to forfeit all his deduction time for certain infractions, especially if aggravated. The keeping of a behavior record is provided for and a hearing and investigation by the board. Section 67-0-12.

In article 7, § 12, of the State Constitution, there are three grants of power, two to the Legislature and one to the State Board of Pardons. The Legislature is given power and authority to change the personnel of the State Board of Pardons, and to provide regulations as to the manner of applying for pardons. The State Board of Pardons is ■ given power and authority to "remit fines and forfeitures, commute punishments, and grant pardons after convictions, in all cases except treason and impeachments * * * upon such conditions, and with such limitations and restrictions as they deem porper * * * subject to such regulations as may be provided by law, relative to the manner of applying for pardons." As thus rearranged the powers and limitations granted and imposed seem to us to be better correlated. The last phrase quoted "subject to such regulations as may be provided by law, relative to the manner of apply-

ing for pardons," limits the power of the Legislature in the matter of regulating or prescribing the procedure as to the manner of applying for pardons. That part of the section vesting power in the State Board of Pardons to remit fines and forfeitures, commute punishments, and grant pardons is self-executing and plenary. No limitation of power is imposed as to those matters. No grant of power is given to the Legislature over the Board of Pardons except to change its personnel and to provide for the manner of applying for pardons. When section 12 of article 7 of the Constitution was adopted, it was at once effective. It superseded the then existing provisions of the statute relating to pardons, remission of fines and forfeitures, and commutations of sentences.

A procedure is provided in the Constitution where it says "no fine or forfeiture shall be remitted, and no commutation or pardon granted, except after a full hearing before the Board, in open session, after previous notice of the time and place of such hearing has been given." Article 7, § 12. The indeterminate sentence law is a law relating to the imposition of sentences upon convictions had and not a law relating to the remission of fines and forfeitures, the commutation of sentences or granting of pardons. The Legislature has the power to define crimes and fix the punishments therefor so long as the punishments are not cruel or unusual. The penalties for crimes are fixed by law and the manner of imposing sentences relating to the penalties has been provided. After a commitment out of a court having jurisdiction has been issued and executed, the prisoner then passes into the immediate custody of the Warden of the State Prison. The Legislature may not remit fines or forfeitures, nor commute punishments, nor grant pardons. This power has been given to the State Board of Pardons with the exceptions above noted relating to treason and impeachment. The so-called merit system or good time off system under the statute is a form of remission of punishment. Such allowances suggested by the statute may be helpful

guides when no other measure for remission or commutation is available. The prisoner may maintain an outward good behavior in order to work for good time off, and to all appearances his conduct may entitle him to such good time off, while his actual reformation at the same time may not have progressed at all. Likewise a prisoner may have been guilty of infraction of some prison rule or regulation and yet be progressing rapidly toward that status which will enable him to function as a worthwhile member of society.

Reverting to section 12, art. 7, of the Constitution, we find the provision that "no fine or forfeiture shall be remitted, and no commutation or pardon granted, except after a full hearing before the Board, in open session after previous notice of the time and place of such hearing has been given," confines that power to the State Board of Pardons and provides the procedure. If the specified deductions provided for by section 67-0-11, R. S. Utah 1933, above quoted, are not part of the sentence—and by construction constitute the maximum sentence conditioned upon good behavior earning the deductions—then no fine or forfeiture or commutation or pardon may be had except after action of the Board of Pardons has been taken.

There is authority for the position that the "Copper Act" or "good time off" provision of the statute is a part of the sentence.

"An examination of the provisions found in the laws of the different states discloses that they classify themselves generally into two groups. In the first are found those statutes which by their terms automatically reduce the period of imprisonment upon the rendition of the judgment. It is said, indeed, that a provision of this character forms a part of the judgment, and that under it the prisoner enters upon his confinement with the statutory assurance that his term is automatically abridged by law, unless by his own breach of prison discipline he forfeits the credits which inhere to his sentence. Under a statute of this character the presumption is in favor of the convict, and the burden is upon the state to show affirmatively the facts which defeat the claim to statutory allowances. *In re Wadleigh*, 82 Cal. 518, 23 P. 190; *In re Canfield*, 98 Mich. 644, 57 N. W. 807; *In re Kness*, 58 Kan.

705, 50 P. 939; *State* v. *Hunter*, 124 Iowa 569, 100 N. W. 510, 104 Am. St. Rep. 361. In the second group are those statutes which determine in advance the amount of credits—computed in days and months—which certain prisoners may earn upon certain specified terms and conditions. The commutation is held out as a reward for good conduct or efficiency in prison labor. A statute of this character cannot enter into the sentence or form a part of it, for the reward must first be earned before the prisoner is entitled to it." *Stephens* v. *Conley*, 48 Mont. 352, 138 P. 189, 192, Ann. Cas. 1915D, 958.

Under our Constitution, the statute for good time off cannot be a part of the sentence. In addition to that, the indeterminate sentence is analogous to a sentence for life in that a maximum is fixed. The so-called "Copper Act" has been held not to apply to life sentences. The maximum is life. The sentence for life may by the State Board of Pardons be commuted to a definite term on such conditions as the board may by its order impose. A sentence for robbery, under the Utah Indeterminate Sentence Law (Rev. St. 1933, 105-36-20) is from five years to life. It could hardly be argued that in commuting the sentence, say to ten years, the board could not add the condition—10 years of actual time served.

In the case of *In re Harry W. Hall*, 34 Neb. 206, 51 N. W. 750, 751, Hall was sentenced to imprisonment for life. The sentence was by the Governor commuted. The commutation order of the Governor read, in part:

"I * * * do hereby commute the sentence of the said Harry W. Hall from life to nine years of actual time in said penitentiary, and, when he shall have served nine years' actual time in said penitentiary, he shall be discharged, with all his former rights of citizenship restored."

The court, in holding that the "Copper Act" did not apply, states:

"Counsel for petitioner in their argument and printed brief have referred us to a number of cases which to our minds are conclusive upon two propositions: First, that the commutation of a sentence like the one under consideration is not in the nature of a conditional pardon, but the substitution of one sentence for another, and for the

purpose of its execution will be treated precisely as if the substituted sentence had been imposed by the court in the first instance, provided, of course, it is within the jurisdiction of the court; second, that an order of commutation, like a pardon, should be strictly construed, as against the state, and liberally in favor of the convict. We are unable, however, to give to the order of commutation the construction contended for by counsel. By the terms used it is plain to us that the governor intended the reduced sentence to be nine years of service within the penitentiary. The language, 'from life to nine years of actual time in the penitentiary, and when he shall have served nine years' actual time in the said penitentiary he shall be discharged,' etc. notwithstanding the foregoing rules, appears to us to be too plain for construction. To construe the commutation in accordance with the contention of counsel for the petitioner would be a palpable violation of that elementary rule of construction, viz. that effect will be given, when possible, to all of the terms and conditions of the instrument in question. In our view, the term 'nine years of actual time in the penitentiary' must be held to mean nine years exclusive of any reduction on account of good time. The demurrer to the petition will be sustained."

From what has been said it follows that the writ of habeas corpus heretofore issued should be, and the same is, recalled, held for naught, and the plaintiff's application therefore denied.

FOLLAND, Justice (concurring).

If the good conduct statute be construed as mandatory, thereby curtailing or controlling the discretion of the Board of Pardons, then I would concur with Mr. Justice MOFFAT that such legislation is an unauthorized intrusion by the Legislature into a field wherein the Board of Pardons has exclusive power under the Constitution. However, I am impressed with the view that such was not the legislative intent or purpose, but that the statute was intended as directory only and not mandatory. I think this becomes evident when we construe the present statutes in the light of their history and progressive development. At the time of statehood, the good conduct statute of the Territory (Comp.

Laws Utah 1888, § 5268) provided that a prisoner not guilty of violation of prison discipline "shall be entitled to a reduction of the period of sentence, as hereinafter provided." When the case of *In re Clawson*, 5 Utah 358, 15 P. 328, was decided, the above statute was in force. That decision did not directly pass on it, but held merely that the statute in force at the time of sentence was the one which determined the reduction in time to which the petitioner was entitled. At the first session of the State Legislature after statehood, an act was passed placing the power of parole of prisoners in the Board of Corrections. This court declared the law unconstitutional and held that parole was in effect a commutation and that the Constitution had placed the exclusive right of commuting punishments and granting pardons in the Board of Pardons. *State* v. *State Board of Corrections*, 16 Utah 478, 52 P. 1090. After that decision was announced, the Legislature made a significant change in the good conduct statute by dropping the language above quoted and, in lieu thereof, enacting the following; "The board of pardons is hereby authorized to extend to each convict" a reduction of "the period of sentence, as hereinafter provided." Laws Utah 1899, chap. 39, p. 56, § 1. The balance of the section was substantially the same. In the same chapter provisions for parole were re-enacted with substitution of the Board of Pardons for the Board of Corrections. In the 1933 revision, section 67-0-10, the language above quoted was slightly changed in phraseology, though not in meaning, to read, "The board of pardons may extend to each convict sentenced," etc. The change of language in 1899 following the holding by this court that the power of commutation was exclusively a matter for the Board of Pardons argues the intent of the Legislature to make the statute conform to the court's construction of the Constitution and to leave the matter of reduction of sentences for good behavior exclusively to the Board of Pardons. The entire subject matter was put by the Legislature in a separate chapter under the heading of "State Board of Pardons," and the good behavior statute

is now contained in the 1933 revision under title 67, "Pardons, Board of."

In 1919 the indeterminate sentence statute was enacted which grafted a new innovation on the old system. In doing so, there was minimum of verbal changes. It presented a new principle in penology. Under the terms of this statute, the trial court after conviction, if prison sentence is pronounced, must sentence the convict for an indeterminate term of not less than the minimum nor more than the maximum of incarceration provided by law for the particular offense The law further provides that the sentence of a prisoner "shall continue in full force and effect until the maximum period has been reached, unless sooner terminated or commuted by the Board of Pardons, as hereinafter provided." Section 9062, Comp. Laws Utah 1917, as amended by chapter 132 p. 353, Laws of Utah 1919, (now section 105-36-20, Rev. Stat. 1933). In the same chapter it is further provided that any person sentenced may apply to the board to "have the sentence terminated or commuted" and "the board [of pardons] may obtain information from any and all available sources respecting such matters, and if in its judgment the applicant has served a sufficient length of time for the offense for which he was convicted, the board [of pardons] may terminate or commute the sentence and order the applicant discharged from further imprisonment under such sentence. In no event shall a prisoner be retained in prison beyond the maximum term fixed by law for the particular crime for which he stands convicted." Rev. St. 1933, 67-0-5. The intent of this act would seem to be to vest entire power in the Board of Pardons, even if it were not already vested in that board by the Constitution, to fix the bounds of a prisoner's incarceration within the maximum fixed by law, the only limitation being that he may not be held beyond that maximum period of time.

The old system was a rigid one. The trial judge fixed a definite prison term which the prisoner might reduce, by observance of prison discipline, by a definite and fixed

time each month. This definite term was the price the prisoner paid for his crime and, when the price was paid, he and society were quits and he would go his way without restraint. Under the new system vengeance and retributive punishment are no longer chief ends to be served, but instead the principal aim is the safety of society by incarceration and reformation of the offender with a view to his restoration to society as a law-abiding and self-supporting member thereof. The philosophy behind the indeterminate sentence is that, the Legislature having determined what acts shall be condemned as criminal, the trial court in a given case will try the defendant to determine whether the criminal act was committed by him, and, if so, to condemn the act by the judgment of imprisonment. The offender is then turned over to the prison authorities for incarceration, and the pardon board will determine, within the limits of its powers, what treatment is best suited to the convict as an individual. In other words, it will fit the punishment or treatment to the prisoner rather than fitting punishment to the crime. The pardon board has better facilities and better opportunity than the trial court to learn about the offender, and as to his character, experience, training, the past criminal record, if any, former associations, family connections, condition of his health, etc. The board will learn about the man from the prison authorities who daily observe his conduct in prison, at work, in school, and his association with other convicts, as to how he behaves, what he reads, with what persons he associates, etc. The case worker will obtain information of his prior life, his family, friends, and previous conduct. Any previous prison record is of course obtainable from official sources. It must be admitted this system is still in its experimental stage and that not all is done that can be done to make its operation successful. One thing is certain that the old methods were not greatly successful, either in protecting society or in reforming persons convicted of crime. The new methods do give promise of being an improvement over the old one. The parole is a vital

and indispensable part of this system. When all information obtainable is before the Board of Pardons, it then is in a position, to determine when, if at all, parole should be granted, and, after parole or without it, when the sentence should be terminated, if at all, prior to the expiration of the maximum term fixed by statute. The letter as well as the theory of the indeterminate sentence act is thus inconsistent with the good behavior statute if it be construed as mandatory. The fixed and rigid characteristics of the good conduct statute fit perfectly into the former system of sentences for definite terms pronounced by the trial court, but are wholly inconsistent with the very flexible system provided for by the indeterminate sentence law.

The precise question before us has not heretofore been decided by this court. However, certain language in decisions involving cognate matters show the view held by members of this court with respect to the validity or effect of the good conduct statute after the passage of the indeterminate sentence law. Such statements, while not controlling, certainly are persuasive. In *Connors* v. *Pratt,* 38 Utah 258, 112 P. 399, 400, the court referred to the good conduct statute and said:

"It seems that, while the statute fixes the maximum amount of time that a sentence may be reduced for good conduct, the board nevertheless must determine whether in a particular case such or some other deduction of time less than the maximum shall be allowed or not."

In the same case the court recognized the necessity for an exercise of discretion by the Board of Pardons by saying the petitioner's sentence would be terminated "if the board of pardons reduced that sentence for the maximum period of time fixed by the statute."

Again in *Mutart* v. *Pratt,* 51 Utah 246, 170 P. 67, 69, involving the validity of the indeterminate sentence act, the court said:

"Neither is the sentence to be imposed under this act left in doubt as to its duration. It is, in effect, a sentence for the maximum period fixed by law subject to the rights to have that sentence reduced or

terminated at an earlier date under rules established by the board of pardons, a body created by the Constitution for that very purpose."

In other jurisdictions it has been held that the good conduct statute is inconsistent with the subsequently enacted indeterminate sentence law, which supersedes its inflexible conditions and places the authority in the Board of Pardons to exercise a plenary supervision with respect to the reduction of sentences. *McCoy* v. *Reid,* 172 Ind. 182, 87 N. E. 1086; *In re Lee,* 177 Cal. 690, 171 P. 958; *In re Daniels,* 106 Cal. App. 43, 288 P. 1109; *Pareses* v. *California State Board of Prison Directors,* 208 Cal. 353, 281 P. 394.

I am of the opinion, therefore, that the statute in question is not an inherent part of the sentence but is a directory and not a mandatory provision and does not control the discretion of the Board of Pardons; that the petitioners are not entitled to be discharged until the end of the maximum period of their sentence as fixed by the statute, unless such period is terminated or commuted prior thereto by action of the Board of Pardons.

EPHRAIM HANSON, Justice.

I concur in the views expressed by Mr. Justice FOLLAND in his concurring opinion.

ELIAS HANSEN, Chief Justice (concurring in the result).

As early as 1866 the Legislature of the Territory of Utah enacted a law lessening the terms of sentences of convicts for good conduct. Laws Utah 1866, c. 6, p. 5 et seq. When the sentences involved in the instant case were imposed, R. S. Utah 1933, 67-0-1 to 67-0-12 were in effect. Such portions of the two acts as are deemed material to a determination of the questions presented for decision are as follows:

Laws of Utah 1866, chap. 6.

Section 1. "That it shall be the duty of the Warden of the Utah Penitentiary to keep a record in which he shall enter a statement of every infraction of the prison rules committed by any of the convicts. At the end of each month, he shall certify upon said record to the good conduct of each convict who has not been guilty of an infringement of any of the rules."

R. S. Utah 1933, title 67.

Section 67-0-4. "The board of pardons may adopt rules and regulations, not inconsistent with law, for its government, its meetings and hearings, the conduct of proceedings before it, providing for the parole of prisoners, for the reduction of sentences for good behavior and for the forfeiture of such reductions, and specially providing for the granting of additional reduction of sentence conditioned upon a prisoner's good behavior and efficient work while employed on state roads, public buildings and public roads."

Section 67-0-7. "The board of pardons may permit any prisoner who is now or may hereafter be imprisoned in the state prison, or any county jail, to go on parole outside of the prison buildings and other inclosures; provided, that a prisoner who is imprisoned for murder in the first degree shall not be permitted to go on parole until he shall have served at least fifteen years' actual time in the state prison. The concurrence of at least four members of the board shall be necessary for the parole of a prisoner."

Section 2. "Each convict sentenced for any period less than life, who has not been guilty of a breach of the rules of discipline of the prison, shall be entitled to a reduction of the period of sentence, as hereinafter provided; and when the full term of imprisonment for which any convict has been sentenced by the Court shall

Section 67-0-10. "The board of pardons may extend to each convict sentenced for any period less than life who shall not have been guilty of a breach of the rules of discipline of the prison a reduction of the period of sentence as hereinafter provided; and when the full term of imprisonment for which such convict shall have been

be diminished by his good conduct under the provisions of this Act, so that the term of imprisonment has thereby expired, the Warden of the penitentiary shall immediately furnish the Secretary of the Territory a certificate stating the length of time his term of imprisonment has been so diminished, and no objections appearing to the Governor, the convict shall be released."

Section 3. "The following deductions shall be allowed to convicts for good conduct; from the term of sentence of three months, fifteen days; from a term of six months, thirty days; from a term of one year, two calendar months; thus a one year convict shall be entitled to a discharge at the expiration of ten months. If the term be for any time greater than one year, the service for the second year, or portion thereof, shall begin at the expiration of ten months, which shall stand for a service of one year. On a second year the convict shall be entitled to a reduction of three calendar months; thus a service of one year and seven months shall be sufficient for a term of two years. The service of a third year, or fraction thereof, shall begin at the expiration of one year and seven months; four calendar months shall be allowed on said third year; thus a service of two years and three months shall be sufficient for a term of three years. For a term of four years, the ser-

sentenced shall be diminished by his good conduct so that his term of imprisonment has thereby expired, the warden shall immediately furnish the board of pardons a certificate stating the length of time his term of imprisonment has been so diminished, and, no objections appearing to the board, the convict shall be released."

Section 67-0-11. "The hereinafter specified deductions shall be allowed to convicts for good conduct:

"(1) From a term of sentence of three months, fifteen days; from a term of six months, thirty days; from a term of one year, two calendar months; thus, a one-year convict shall be entitled to a discharge at the expiration of ten months.

"(2) If the term is for any time greater than one year, the service for the second year or portion thereof shall begin at the expiration of ten months, which shall stand for a service of one year. On the second year the convict shall be entitled to a deduction of three calendar months; thus, a service of one year and seven months shall be sufficient for a term of two years.

"(3) The service of a third year, or portion thereof, shall begin at the expiration of one year and seven months; four calendar months shall be allowed on said third year; thus a service of two

vice of the fourth, or portion thereof, shall begin at the expiration of two years and three months, and on the fourth year five months shall be allowed, thus a service of two years and ten months shall be sufficient for a term of four years. In a term of five years the service of the fifth year, or portion thereof, shall begin at the expiration of two years and ten months, and from the fifth year there shall be a deduction of six calendar months; thus a service of three years and four months shall be sufficient for a term of five years. For all time in excess of five years there shall be a deduction of one-half for such time."

Section 4. "In all terms of sentence terminating immediately between those terms hereinbefore specified the deduction shall be proportionate to those named in the foregoing section."

Section 5. "For a violation of the rules, the convict shall be liable to forfeit all of his reduction time for the month in which the infraction occurs. If the offense or offenses be aggravated or frequent, the Warden or other officer in charge shall have power to punish the offender by depriving him of all or any portion of his reduction time earned previous to the commission of said offense or offenses. Provided, that any convict who may feel himself aggrieved by the action of the War-

years and three months shall be sufficient for a term of three years.

"(4) The service of the fourth year, or portion thereof, shall begin at the expiration of two years and three months, and on the fourth year five months shall be allowed; thus, a service of two years and ten months shall be sufficient for a term of four years.

"(5) The service of the fifth year, or portion thereof, shall begin at the expiration of two years and ten months, and from the fifth year there shall be a deduction of six calendar months; thus, a service of three years and four months shall be sufficient for a term of five years.

"(6) For all time in excess of five years there shall be a deduction of one-half of such time. In all terms of sentence terminating between those hereinbefore specified, the deduction shall be proportionate."

Section 67-0-12. "For a violation of the rules the convict shall be liable to forfeit all his deduction time for the month in which the infraction occurs. If the offense or offenses be aggravated or frequent, the warden, or other officer in charge, may punish the offender by depriving him of all or any portion of his deduction time earned previous to the commission of such offense or offenses; provided, that any convict who may feel himself aggrieved by the action of the warden, or

den or other officer in charge in such cases, shall have the right to appeal, in writing, to the Governor of the Territory, which writing shall include a statement of facts, and the evidence and reassons of the appellant for considering himself unjustly dealt with. Should the Governor, upon investigation, deem the complaint of the convict well grounded, he shall have power to credit back to said convict the earned reduction time of which he has been deprived."

other officer in charge, in such cases shall have the right to appeal, in writing, to the board of pardons, which writing shall include a statement of facts and the evidence and reasons of the appellant for considering himself unjustly dealt with. Should the board upon investigation deem the complaint of the convict well grounded, it shall credit back to him the earned deduction time of which he shall have been deprived."

In the case of *In re Rudger Clawson*, 5 Utah 358, 15 P. 328, the Supreme Court of the Territory of Utah took the view that when, and only when, a statute lessening the term of a sentence for good conduct is in effect when sentence is imposed, such statutory provision in effect becomes a part of the sentence. That is the holding of the courts generally. 50 C. J. 346, 347. It will be observed that the act of 1866 differs in a number of particulars from the law which was in effect when the sentences which are here brought in question were imposed The difference, however, in the two enactments is not of controlling importance upon the questions which are here presented for determination, Defendant lays considerable stress upon the use of the word "may" in the first sentence of R. S. Utah 1933, 67-0-10. It is urged that the use of that word indicates a legislative intention to leave the matter of whether good time shall or shall not be allowed entirely to the discretion of the Board of Pardons. The adjudicated cases and the authorities generally are to the effect that whether the use of the word "may" in a particular statute "is to be construed as mandatory and imposing a duty, or merely as permissive and conferring discretion, is to be determined in each case from the apparent in-

tention of the statute as gathered from the context, as well as the language of the particular provision. * * *

"The word 'may' in a statute will be construed to mean 'shall' whenever the rights of the public or third persons depend on the exercise of the power or the performance of the duty to which it refers, and such is its meaning in all cases where the public interests and rights are concerned, or a duty is imposed on public officers, and the public or third persons have a claim de jure that the power shall be exercised. * * *

"The true rule of construction is that the word 'may' as used in a statute, 'is to be taken as meaning "must" or "shall" only in cases where the public interest and rights are considered, and where the public or third persons have claimed de jure that the right shall be exercised. In other cases the enactment is not imperative, but left to sound discretion.'" 5 Words and Phrases Judicially Defined, First Series, p. 4421.

The doctrine of the foregoing text is well established, as will be seen from an examination of the cases therein cited, to which many others might be added. It will be noted in the last part of R. S. Utah 1933, 67-0-10, it is provided that "the warden shall * * * furnish the board of pardons a certificate stating the length of time his [prisoner's] term of imprisonment has been so diminished, and, no objections appearing to the board, the convict shall be released." The use of the language "no objections appearing to the board, the convict shall be released," is clearly mandatory. Thus, the word "may" used in the first part of the section under review must be held to be mandatory, or the word "shall" used in the latter part of that section must be held as merely conferring discretion on the board. When we look to the other provisions of R. S. Utah 1933 heretofore quoted in this opinion, the language used will admit of no other construction than that the Legislature intended that good time must be allowed convicts who by their conduct in prison have earned the same. The use of the word "earned" in the act is significant. Generally speaking, one has a right to that which he has earned. The language of R. S. Utah 1933, 67-0-12, gives a prisoner who feels himself aggrieved by the

failure of the warden to give him credit for good time the right of appeal to the Board of Pardons It is then provided that, "should the board upon investigation deem the complaint of the convict well grounded, it shall credit back to him the earned deduction time of which he shall have been deprived." If, as contended on behalf of the warden, it is merely a matter of discretion of the Board of Pardons whether it will or will not allow a deduction for good time actually earned, it is difficult to perceive why the lawmaking power should take pains to enact into law specific directions as to deductions that shall be made for good conduct. If the Board of Pardons may, as it sees fit, withhold deductions for good conduct, then and in such case the statutory provisions fixing definite rules for making deductions for good behavior, and providing that a convict who feels himself aggrieved may appeal from the action of the warden to the Board of Pardons, are useless. Quite generally the purpose sought to be accomplished on an appeal is to establish a right which the appellant claims has been erroneously denied him by an inferior officer, board, or tribunal. To fail to allow deduction for good conduct of a convict is to fly in the face of that cardinal rule of statutory construction which requires that, when possible, effect must be given to all of its provisions. 25 R. C. L. p. 1004, § 246. Moreover, it is clear that deductions from sentences of convicts who obey the prison rules is calculated to improve the discipline of those who are confined therein, and to impress upon them that good behavior is not without reward. The Legislature doubtless had these purposes in mind when it enacted the law here under review. Such being the end sought to be accomplished by the law, it is the duty of the courts to so construe it as to accomplish that object and purpose. 25 R. C. L. 1013, § 253. In this connection it may be observed that in both state and nation we are governed by laws and not by men; not only special laws but also special favors granted by those in authority to one person not accorded to all under similar circumstances are uniformly looked upon as contrary

to our system of government. Moreover, even where discretionary power is vested in an officer, board, or tribunal, the exercise of that power is not absolute. Discretionary power must be exercised in accordance with rules of law, notwithstanding such rules may often be difficult to circumscribe with accuracy. This court has frequently held that discretionary power may not be exercised arbitrarily or capriciously. There is no valid reason why the same rules should not apply to the board of pardons.

Our attention is called to the provisions of R. S. Utah 1933, 67-0-4, wherein the Board of Pardons is given authority to adopt rules and regulations for the reduction of sentences for good behavior and for the forfeiture of such reductions. The foregoing provision does not make against but rather tends to support the view that convicts are entitled to credit for good behavior. The Board of Pardons is by that section permitted to adopt only such regulations as are not inconsistent with law. The Legislature has not attempted to make any rules or regulations touching what shall and what shall not constitute such good conduct as entitled a convict to credit for good behavior. That power is by the section under review conferred upon the Board of Pardons which may also grant additional reductions for "a prisoner's good behavior and efficient work while employed on state roads, public buildings and public roads."

It is further urged that the act making sentences other than those for murder and treason indeterminate is in conflict with the law which grants prisoners a deduction from their sentences for good behavior. There is no difficulty in granting deductions for good behavior from a sentence which is indeterminate. An indeterminate sentence "shall continue in full force and effect until the maximum period has been reached, unless sooner terminated or commuted as provided by law." R. S. Utah 1933, 105-36-20. Whether a given sentence is indeterminate or for a fixed period, all that need be done is to deduct the good time earned from the maximum period of the sentence. It would, to say the

least, be illogical to say that credit for good behavior should be granted as a matter of right to one imprisoned for a fixed period but should be denied to one whose sentence is indeterminate. The same reasons for granting a deduction in the one case apply equally to the other. When the Legislature enacted R. S. Utah 1933 containing provisions for the imposition of both indeterminate sentences and fixed sentences and provided for granting credit for good behavior, it made no attempt to limit the provisions granting credit for good behavior to those convicts who are sentenced for a fixed time. The courts are not warranted in grafting any such distinction upon the law as applied to indeterminate sentences.

The view is expressed in the prevailing opinion that our State Constitution, article 7, § 12, vests in the Board of Pardons exclusive authority to "remit fines and forfeitures, commute punishments, and grant pardons after convictions, in all cases except treason and impeachments." With such view I am in entire accord. The Legislature may not exercise such functions, but it, and it alone, has, within constitutional limitations, authority to fix the punishment that shall be imposed upon those who are convicted of criminal offenses. A provision granting a deduction of sentence for good behavior is not, under the authorities, the exercise of the pardoning power, but the fixing of the punishment. It is the equivalent of providing that the sentence imposed shall be for the term fixed less such credit as the convict may earn by his good conduct while confined in prison. The Legislature having, as it does, authority to fix punishment, may fix a lesser punishment for those who obey the prison rules and regulations than is imposed upon those who do not. I am unable to agree with my associates that such a law offends against the constitutional provision which vests the pardoning power in the Board of Pardons. That such laws are not unconstitutional finds support in the authorities. *In re Clawson*, supra; 12 C. J. 1002, and cases there cited.

In his concurring opinion Mr. Justice FOLLAND cites cases from Indiana and California in support of the view that our statutory provisions making sentences indeterminate should prevail over the statutory provision providing for deductions for good behavior. Some of the cases so cited are authority for the view that subsequent enactment of an indeterminate sentence law by implication repeals a prior law making it mandatory that deductions be allowed for good behavior. An examination of these cases reveals the fact that the laws in those jurisdictions requiring that sentence be made indeterminate conflicted, in a number of particulars, with the pre-existing law which required that deductions be made for good behavior. As heretofore indicated, the provisions of our law requiring that sentences shall be made indeterminate and the provisions of our law requiring that deductions from sentences be made for good behavior may both be given effect. There is no greater difficulty in applying the law relating to granting deductions for good behavior when the sentence is indeterminate than there is when the sentence is for a fixed period. Under our statute, a so-called indeterminate sentence is, in a sense, a misnomer, because it is a sentence for the maximum period fixed by law. Moreover, it may not be said that the Legislature, by the enactment of the indeterminate sentence law, intended to repeal the statute granting a deduction from sentences for good conduct, because both provisions were re-enacted as a part of R. S. Utah 1933. In such case the two provisions are in pari materia. They should both be given effect. That may be done without doing violence to either. Thus, in my view, those prisoners who earn credit for good conduct are, as a matter of law, entitled to a deduction from the maximum terms of their sentences to the extent specified in R. S. Utah 1933, 67-0-11. It is, however, primarily the province of the Board of Pardons to determine the fact of whether the prisoner has or has not complied with the rules and regulations of the state prison. In the absence of action by the Board of Pardons, the warden is without authority to

release a prisoner prior to the expiration of the maximum term of his sentence. The warden is required to furnish the Board of Pardons a certificate stating the length of time the convict's term of imprisonment has diminished because of good conduct and, "no objections appearing to the board, the convict shall be released." Thus, notwithstanding the warden may think a convict is entitled to credit for good time, the Board of Pardons may find otherwise. Until the Board of Pardons has approved the deduction of sentence, the warden is powerless to release a convict before he has served the full term of his sentence. The Board of Pardons, however, may not deny credit for good behavior in the absence of facts justifying such action. If upon investigation it is found that a convict has not been guilty of the infraction of any of the rules or regulations promulgated by the prison authorities, he is, as a matter of law, entitled to credit for good conduct as by law provided.

It is alleged in each of the petitions for a writ of habeas corpus, and admitted in the answers of Warden Davis, that the "petitioner has never been found guilty by any court of breach of the peace or any other crime in the State of Utah since his said confinement in said prison. The petitioner has never been informed that any of his good time was taken from him by the defendant warden of said prison." It is also alleged in the petition, but denied by the answer of the warden, "that petitioner was and still is entitled to his good time in said prison and should have been released from said prison on January 17, 1936." The allegation last quoted is open to the objection that it states a conclusion of law rather than an allegation of a fact. If such language be viewed as an allegation of an ultimate fact, still the warden's answer raises an issue of fact which should be determined by the Board of Pardons. Petitioners urge that, in the absence of any showing to the contrary, there is a presumption that each of them is entitled to credit for good conduct and that they may not be deprived of credit for good conduct without an opportunity to be heard. Cases are cited

in support of that doctrine. The law announced in those cases is sound, but, as heretofore indicated in this opinion, the petitioner should seek release from the Board of Pardons before applying to this court for release. So far as is made to appear, the petitioners have not applied to that tribunal for credit for good time. Orderly procedure requires that they exhaust their remedy in that forum before applying to the courts for relief. In a sense prisoners are under the control of the Board of Pardons; that is to say, the warden may not release them until they have served their full sentence unless otherwise directed by the Board of Pardons. The Board of Pardons is not a party to this proceeding. So far as is made to appear, the board may have a good and sufficient reason why the applicants for the writs should not be given credit for good behavior. By our Constitution, article 7, § 12, as well as by statutory enactment, R. S. Utah 1933, 67-0-4, the Board of Pardons is given broad powers in making rules and regulations touching the matter of leniency to convicts. The exercise of that power is, however, subject to such regulations as may be provided by law. Notwithstanding the warden may deem a prisoner entitled to credit for good behavior, the Board of Pardons may, for good cause shown, deny such credit. R. S. Utah 1933, 67-0-12. Thus, while I do not agree with what is said in the prevailing opinion as to why the writs should be denied, still I am of the opinion that upon the facts alleged and admitted in this proceeding the applicants have failed to affirmatively establish the fact that they are entitled to credit for good behavior. They should first seek relief from the Board of Pardons, and, if such board without good cause fails to give them credit for good conduct, then and in such case this court should grant them relief.

I concur in the order denying the writs prayed for.

WOLFE, Justice (concurring in the result).

I concur in the views expressed by Mr. Chief Justice HANSEN in his opinion concurring in the results.