## DAVIS v. GRASSIE et al.

### No. 49 C 351.

United States District Court
N. D. Illinois, E. D.
June 1, 1949.

Sanford Olson, and Schneider, Koch and Campbell, Chicago, Ill., for the petitioner.

Otto Kerner, Jr., United States Attorney, Chicago, Ill., for the respondent.

CAMPBELL, District Judge.

This cause is before the Court on a petition for a writ of habeas corpus. The petitioner is an enlisted man in the United States Navy and is presently detained in the Naval Brig, Naval Training Center, Great Lakes, Illinois, awaiting trial before a general court-martial on specifications charging him with unauthorized absence and desertion. There being no dispute as to the facts, the matter was taken under advisement on the written pleadings and briefs of the parties.

The facts may be stated briefly as follows: (a) July 1, 1946—Petitioner enlisted in the United States Navy for a period of two years; (b) December 19, 1947—Petitioner was convicted by a general court-martial on charges of unauthorized absence and breaking arrest, and received the following sentence: reduction in rate to apprentice seaman, confinement for three years, and dishonorable discharge from the Navy; (c) January 13, 1948—The convening authority of the court martial approved the proceedings, findings and sentence, but reduced so much of the sentence as pertained to confinement from three years to eighteen months; (d) July 1, 1948—The Naval Sentence Review and Clemency Board recommended a further reduction of sentence in that petitioner be placed on six months probation; (e) July 7, 1948—The above recommendation was approved by the Acting Secretary of the Navy and promulgated on July 9, 1948. Pursuant to this action, petitioner was restored to active duty; (f) August 19, 1948—Petitioner absented himself from duty, but was apprehended shortly thereafter; (g) September 4, 1948—Petitioner again absented himself from duty, and was eventually apprehended by the Department of Justice on January 15, 1949 and turned over to the authorities at Great Lakes; (h) February 8, 1949—The specifications which are now pending before the general court-martial were filed against petitioner.

The principal issue involved, stated in its simplest terms, is: Does the Secretary of the Navy have any statutory authority to place prisoners on probation? The solution to that problem necessarily resolves itself down to an interpretation of the pertinent section of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, wherein the powers of the Secretary of the Navy are defined.

"(a) Remission and mitigation of sentence. Every officer who is authorized to convene a general court-martial shall have power, on revision of its proceedings, to remit or mitigate, but not to commute, the sentence of any such court which he is authorized to approve and confirm.

"(b) Power of Secretary of Navy over proceedings and sentences of courts-martial. The Secretary of the Navy may set aside the proceedings or remit or mitigate, in whole or in part, the sentence imposed by any naval court-martial convened by his order or by that of any officer of the Navy or Marine Corps." 34 U.S.C.A. § 1200, art. 54.

It should be understood at the outset that the term probation, as it is used in naval terminology, is synonymous with the term parole, as it is used in the civil

834

law. In other words, it applies to persons convicted and already committed to prison, and does not refer to the exercise of the ameliorating process by the trial court prior to commitment.

The petitioner contends strongly that probation is, in effect, a commutation of sentence and, since Article 54(b) contains no express grant of a power to commute, the Secretary of Navy does not possess the authority to place a prisoner on probation.

Although not cited by petitioner, the case of Duehay v. Thompson, 9 Cir., 223 F. 305, 307, serves to sustain his contention that commutation and parole are identical:

"A parole is tantamount to a commutation, for, as said by the court in the case last cited (State v. State Board of Corrections, 16 Utah 478, 52 P. 1090), it—'substitutes lesser punishment for that imposed by the sentence. It changes one punishment known to the law for another and different punishment, also known to the law. In other words, it substitutes a less grade of punishment for that inflicted by the sentence pronounced upon conviction.' "

However, this Court cannot concur with the conclusion reached in the Duehay case, for there is a recognized distinction between a prisoner released by a commutation of sentence and a prisoner released upon parole. A commutation actually modifies the sentence imposed by the court. A paroled prisoner remains in legal custody. Although allowed to go outside the prison walls, he remains, in legal theory, in prison and serving his sentence. A prisoner released on commutation of sentence, unlike a prisoner on parole, does not continue to serve his sentence. In other words, a parole merely involves an alteration in the manner in which the original sentence may be served, but in no way affects the quantity of the sentence imposed by the court. The following cases confirm this view:

"The parole of a prisoner by the Board of Parole is not a suspension of the sentence but merely substitutes for confinement in the penitentiary confinement within the bounds specified by his parole outside of the penitentiary, still subject to the legal custody of the warden. But the prisoner is not free of his sentence while he is out of the prison under the parole. He is still serving his sentence. Anderson, Warden v. Williams, 8 Cir., 279 F. 822". United States ex rel. Gutterson v. Thompson, D.C., 47 F.Supp. 150, 151.

"* * * It must be borne in mind that the legal philosophy underlying the parole law is not a release of the prisoner from all disciplinary restraint but is rather merely 'an extension of the prison walls'; and the prisoner while on parole remains 'in the legal custody and under the control of' the Parole Board". United States ex rel. Rowe v. Nicholson, 4 Cir., 78 F.2d 468, 469.

"* * * The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment. The sentence and service are subject to the provision of § 6 that if the parole be terminated the prisoner shall serve the remainder of the sentence originally imposed without deduction for the time he was out on parole." Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 44, 68 L.Ed. 247.

Even conceding for the sake of argument, that a parole constitutes a commutation of sentence, there still remains authority for the proposition that the Secretary of the Navy possesses the power to commute a sentence imposed by a court-martial.

"* * * The Secretary of the Navy is given the power to set aside proceedings before a court-martial, or remit in whole or in part the sentence which it has imposed; but, unlike the officer who convenes the court-martial, he is not in terms denied the power to commute the sentence. In our opinion, the broad power conferred upon him to mitigate includes also the power to commute. His power to mitigate punishment is as comprehensive as was the power of the President under the Act of April 23, 1800, 2 Stat. 51. In an able opinion by Attorney General Wirt the

President is stated to have the power under the early statute to commute a sentence of death into one of service and restraint for a limited time. 1 Op.Attorney General 327. In that opinion it is well said that a sentence of death can be mitigated only by changing it, and that to hold otherwise would be to compel the President by pardon to free the accused altogether, or to subject him to the severest penalty of all. We conclude that the power of the Secretary of the Navy to mitigate a sentence of a court-martial includes the power to commute that sentence to life imprisonment, and that, this power having been exercised, the sentence as modified, not extending to the loss of life, was valid, and could be carried into execution without being confirmed by the President." Aderhold v. Menefee, 5 Cir., 67 F.2d 345, 346.

■ There are numerous cases wherein differences have been pointed out in the definitions of the terms pardon, mitigation, commutation and parole. It should be noted, however, that the peculiar facts with which the courts were confronted in each case necessitated such distinctions. That the various terms may be validly distinguished, does not preclude the conclusion that a grant of a greater power impliedly includes a grant of a lesser power. Where there is a grant to an official of the general power to pardon, there is logically a grant of the lesser powers to mitigate, commute and parole.

"'A commutation is the substitution of a less for a greater punishment, by authority of law, and may be imposed upon the convict without his acceptance, and against his consent. In this respect it differs from a pardon to the validity of which acceptance is essential. The power to commute sentence is a part of the pardoning power, and may be exercised under a general grant of that power. The general power necessarily contains in it the lesser power of remission or commutation. If the whole offense may be pardoned, a fortiori, a part of the punishment may be remitted or the sentence commuted'". Chapman v. Scott, D. C., 10 F.2d 156, 159.

"In revoking the commutation and directing the appellant to be returned to prison, the President was acting within his powers. The constitutional power to grant reprieves and pardons includes the power to grant commutations on lawful conditions. * * *" Lupo v. Zerbst, 5 Cir., 92 F.2d 362, 365.

It might be contended that the Secretary of the Navy has not been granted the power to pardon under Article 54(b) of the Articles for the Government of the Navy. That Article authorizes the Secretary "to remit or mitigate, in whole or in part, the sentence imposed by any naval court-martial". If there is a distinction between the power to pardon and the power to remit, in whole or in part, this Court is unable to perceive it. It follows, therefore, that the power which has been ceded to the Secretary of the Navy to remit necessarily contains the lesser powers to mitigate, commute and parole.

■ What, then, was the effect of the approval by the Acting Secretary of the Navy on July 7, 1948 of the recommendation whereby petitioner was to be returned to active duty and placed on probation for a period of six months? His action had a two-fold aspect; it was both a commutation and a parole. At that time, petitioner had served approximately six months of his eighteen-month sentence (a naval prisoner commences to serve his sentence as of the time the convening authority approves the sentence imposed by the court-martial which, in this case, was January 13, 1948). By reducing the time still remaining to be served from twelve months to six months, the Secretary thereby commuted that portion of the sentence. By returning the petitioner to active duty and placing him on probation for six months, he thereby paroled him. And it cannot be validly contended that the commutation and parole were not granted on lawful conditions. There is certainly nothing unlawful in the act of placing a prisoner on parole for a period of time which does not extend beyond the term of the original sentence. Nor can the Court agree with the assertion of the petitioner that this was an improper extension of enlistment by the Secretary of the Navy. This was not an extension of enlistment, but a parole. Assuredly, petitioner could not sincerely main-

tain that he would have been entitled to be released from prison on the day his normal enlistment period expired. As it has been pointed out previously in this memorandum, a prisoner on parole remains in legal custody and, in legal theory, in prison and serving his sentence. Therefore, the mere fact that he was placed on parole subsequent to the time his normal enlistment would have terminated, does not alter his status as a prisoner serving his sentence.

In addition, it should be noted that to sustain petitioner's position would jeopardize the salutary effects of the probation system which has only recently been inaugurated by the Navy. Rehabilitation of prisoners, whether they be military or civilian, is of great public interest, which interest it is the duty of the Court to maintain.

For the above reasons, the petition for a writ of habeas corpus is hereby denied.