**Elwood T. HUGHES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6400.**

District of Columbia Court of Appeals.

Argued Nov. 20, 1972.

Decided July 27, 1973.

———◆———

Clement Theodore Cooper, Washington, D.C., for appellant.

John C. Lenahan, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John A. McCahill, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, NEBEKER and PAIR, Associate Judges.

PAIR, Associate Judge:

Indicted for sodomy,[1] assault with a dangerous weapon,[2] and mayhem,[3] appellant after trial by jury was, on May 27, 1971, found guilty of the sodomy and assault charges[4] and sentenced on January 26,

239

1972, to concurrent terms of 10 years' imprisonment.

On this appeal it is contended that (1) appellant was denied an opportunity to invoke the defense of insanity,[5] (2) the trial court erroneously refused to commit him to St. Elizabeths Hospital as a sexual psychopath,[6] (3) the sentences of imprisonment constituted under the circumstances cruel and unusual punishment proscribed by the Eighth Amendment, and (4) the jury verdict was contrary to the weight of the evidence.

Consideration and disposition of these assignments of error require a recital of some of the bizarre and sordid details of an encounter by the appellant with the complaining witness (complainant), a prostitute.

It is uncontroverted in the record that about 8:00 p. m. on Sunday, November 15, 1970, complainant, while standing at the intersection of 14th and Q Streets, N.W., was approached by appellant and solicited to engage in various sexual acts. Having agreed upon the price for such acts, including fellatio and cunnilingus, complainant entered appellant's automobile—expecting that they would proceed to a convenient place. Appellant, however, drove to a nearby parking lot and began immediately to choke complainant until she lost consciousness. When she recovered, complainant attempted to get out of the automobile but appellant again seized her by the throat and choked her into insensibility. This time when she recovered she noticed that she had been almost completely disrobed and that appellant was biting her breasts. Complainant was then repeatedly forced to commit various acts of oral sodomy as appellant intermittently struck her about the head and face with his

---

1. D.C.Code 1967, § 22-3502.

2. D.C.Code 1967, § 22-502.

3. D.C.Code 1967, § 22-506.

4. On appellant's motion, a judgment of acquittal was entered as to the mayhem charge.

5. D.C.Code 1972 Supp., § 24-301.

6. D.C.Code 1972 Supp., § 22-3503 et seq.

fists and a flashlight. Finally, according to the complainant:

> [H]e plunged the flashlight up inside my vagina. He kept pushing it back and forth up in my vagina and I started screaming and he hit me again and told me if I screamed that he was going to kill me.

> .  .  .  .  .  .

> So while he was plunging the flashlight in my vagina he asked me, "How does it feel? Was it painful?" and I said, yes, and he said, "You may not be able to do this any more."

After forcing complainant to commit additional perverse sexual acts, appellant permitted her to dress and then returned her to the intersection of 14th and Q Streets, N. W.

∎ Based upon the foregoing as corroborated by medical and other evidence, the jury apparently experienced no difficulty in arriving at a verdict of guilty as to both charges. Because, therefore, the evidence of appellant's guilt is overwhelming, his contention that the verdict of the jury was contrary to the weight of the evidence is clearly without substance. *See* Borum v. United States, 133 U.S.App.D.C. 147, 409 F.2d 433 (1967), cert. denied, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); Bailey v. United States, 132 U.S. App.D.C. 82, 405 F.2d 1352 (1968); and *compare with* Coltrane v. United States, 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969); United States v. Bryant, 137 U.S. App.D.C. 124, 420 F.2d 1327 (1969).

∎ We turn now to appellant's contention that he was denied an opportunity to invoke at trial the defense of insanity.[7] The short answer to this contention is that there is not a scintilla of evidence in the record that appellant sought to raise the defense of insanity either before trial or at any time prior to the return of the jury's verdict.[8] All that appears in this regard are the unsubstantiated representations of appellant's counsel made during the post-trial proceedings and in his brief filed on appeal.

Appellant says, however, that because of the nature of the offenses and his prior conviction of a sex-related murder, both the court and the United States Attorney were on notice ". . . that a defense of *insanity would be invoked notwithstanding* the trial court's denial of appellant's request to invoke that defense immediately before trial."

Of course, as pointed out above, there is no showing whatsoever that appellant's counsel requested prior to trial permission to raise, notwithstanding D.C.Code 1972 Supp., § 24–301(j), the defense of insanity. Nor is there any showing that the trial judge was informed, prior to or during the trial, of appellant's conviction in 1949 for a sex-related second-degree murder. Thus the trial court was not, prior to the return of verdict of the jury, called upon to exercise any discretion respecting the defense of insanity. *Cf.* Trest v. United States, 122 U.S.App.D.C. 11, 350 F.2d 794 (1965).

What does appear is that after the jury returned its verdict appellant's counsel announced, during bail release considerations, that appellant had served some 17 years of a sentence of imprisonment for murder committed during a sexual assault; that

---

7. By D.C.Code 1972 Supp., § 24–301(j), it is provided:

> Insanity shall not be a defense in any criminal proceeding in the United States District Court for the District of Columbia or in the Superior Court of the District of Columbia, unless the accused or his attorney in such proceeding, *at the time the accused enters his plea of not guilty or within fifteen days thereafter or at such later time as the court may for good cause permit, files with*

> *the court and serves upon the prosecuting attorney written notice of his intention to rely on such defense. . . .* [Emphasis added.]

8. We have held before that we will not consider as error any matter outside the record. Bethel v. United States, D.C. App., 215 A.2d 763, 765 (1966); Johnson v. United States, 138 U.S.App.D.C. 174, 426 F.2d 651 (1970).

during approximately eight years of such imprisonment he was confined for psychiatric treatment in a federal hospital; and that since his release on parole he had been receiving psychiatric treatments from a private physician. A copy of the report of Dr. E. Y. Williams was at that time submitted to the court. It appears also that on the day following the return of the jury's verdict appellant's counsel represented to the court that appellant, while confined pending the imposition of sentence, had attempted to take his own life. The court thereupon committed appellant to St. Elizabeths Hospital for evaluation as to his competency.

On August 27, 1971, the Superintendent of St. Elizabeths Hospital reported to the court that:

[Appellant] is competent to participate in the pending legal proceedings[9] by virtue of having a rational as well as factual understanding of them and being able to consult with counsel with a reasonable degree of understanding.

He is suffering from a mental disorder, namely, Sexual deviation, sadism, severe, and was suffering from said mental disorder at the time of the alleged offense which substantially impaired his behavior controls. Furthermore, the alleged offense, if committed by him, was a product of his illness.

Several weeks after the receipt of the report from St. Elizabeths Hospital appellant, on September 24, 1971, moved for a new trial[10] which, on November 11, 1971,

was denied. Appellant then on November 30, 1971, moved the court to commit him to St. Elizabeths Hospital pursuant to D.C. Code 1967, § 22–3501 et seq., as a sexual psychopath.[11] That motion was denied also, after which appellant was sentenced to concurrent terms on the sodomy and assault with a dangerous weapon charges.

We address now appellant's contention that on this record it was error to deny him the benefit of a commitment to St. Elizabeths Hospital as a sexual psychopath. The basis for this contention is that the reports of Dr. E. Y. Williams and the Superintendent of St. Elizabeths Hospital both indicated that appellant was then "suffering from a mental disorder, namely, Sexual deviation, sadism, severe . . . ."

But under the statute the term "sexual psychopath" means a person "not insane," and the two reports indicate quite clearly that appellant is mentally ill. Consequently, the trial court determined correctly that appellant was not at that time eligible for commitment as a sexual psychopath. Norwood v. Jacobs, 139 U.S.App.D.C. 162, 430 F.2d 903 (1970); Millard v. Harris, 132 U.S.App.D.C. 146, 406 F.2d 964 (1968).

It is true, of course, that as a general rule a person is not criminally responsible if by virtue of a related abnormal mental condition he committed the acts charged. United States v. Brawner, 471 F.2d 969 (D.C.Cir.1972); McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (en banc 1962); Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d

9. The only legal proceedings then pending involved the imposition of sentence and perhaps the revocation of parole which had been granted after serving 17 years of the sentence in the second-degree murder case.

10. The motion filed as it was almost 120 days after the verdict, even if regarded as having been based upon newly discovered evidence, Super.Ct.Crim.R. 33, was properly denied since appellant's counsel was

fully informed of appellant's alleged mental condition.

11. D.C.Code 1972 Supp., § 22–3503(1):
The term "sexual psychopath" means a person, not insane, who by a course of repeated misconduct in sexual matters has evidenced such lack of power to control his sexual impulses as to be dangerous to other persons because he is likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of his desire.

862 (1954).[12] Here, however, no issue as to the effect appellant's mental condition may have had on his acts was raised at trial. Under the circumstances we hold that the trial court did not abuse its discretion in denying the motion for a new trial which belatedly sought to raise the issue. The only issue that remained alive, therefore, was that of competency, the controlling consideration in the sentencing proceedings which followed the denial of appellant's motion for commitment as a sexual psychopath.

■ The court (concerned following the recital at trial of the sordid details of appellant's encounter with the complainant, the post-trial disclosure of the report of appellant's psychiatrist and appellant's attempted suicide) ordered a mental examination to determine his mental competency.[13] See Lynch v. Overholser, 369 U.S. 705, 718–719, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

The report when filed indicated that appellant was "competent to participate in the pending legal proceedings [14] by virtue of having a rational as well as factual understanding of them and being able to consult with counsel with a reasonable degree of understanding."

The certification of competency following the D.C.Code 1972 Supp., § 24–301(a), referral reflected, of course, nothing more than a medical judgment and therefore did not constitute an adjudication of appellant's competency to participate in the sentencing proceedings. However, absent objection by appellant or by the government, the trial judge was authorized in his discretion to proceed without first conducting a hearing on the issue of competency. Compare Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100

(1965). In that case, as in the case at bar, a certificate of competency was returned following a Section 301(a) referral to which no objection was made, and the court, in disposing of the question whether under the circumstances a hearing was required, said at 335, 346 F.2d at 816.

. . . [W]e neither say nor imply that he *must* do so merely because the hospital's report is not objected to by either of the parties. Unquestionably a trial judge is always free to pursue whatever inquiry into the question of an accused's competency he feels necessary. He *may* conclude that the hospital's report is inadequate and *sua sponte* request an elaboration of the report or order a hearing, and indeed, there may be cases in which, on the basis of what he knows and can see about the accused, he should do so, notwithstanding the certification. We hold only that he is not *bound* to hold a hearing on the issue of competency when an accused is certified to be competent and there is no objection to such certification. [Footnote omitted.]

We have reviewed carefully the record in the case at bar with particular attention to the sentencing proceedings, but have found nothing which persuades us that the trial court abused its discretion.

■ Lastly, appellant argues that because of the character of his mental illness the sentence imposed constitutes cruel and unusual punishment, within the purview of the Eighth Amendment. It seems to us that appellant's complaint is not with his sentence *as imposed*, but rather with his sentence *as executed*. See Freeman v. United States, 103 U.S.App.D.C. 15, 254 F.2d 352 (1958). We note that the sentencing court directed that appellant be given treatment. See D.C.Code 1967, § 24–302. See also 18 U.S.C. § 4241 (1948).

12. While the Circuit Court has in United States v. Brawner, *supra*, abandoned the *Durham-McDonald* standard, this court has not passed on the issue. We intimate no opinion on the subject at this time.

13. D.C.Code 1972 Supp., § 24–301(a).

14. *See* note 9, *supra.*

We share the trial court's concern. If appellant is not receiving treatment to which he is entitled he is privileged to assert any right he may have by apppropriate legal proceedings.

Affirmed.