Ray DODGE, Plaintiff and Appellant,

v.

W. Sterling EVANS, individually and in his capacity as Salt Lake County Clerk, Kay Llewellyn, individually and in her capacity as Deputy Salt Lake County Clerk, Election Department, and Salt Lake County, a governmental entity, Defendants and Respondents.

No. 18488.

Supreme Court of Utah.

Sept. 4, 1985.

Brian M. Barnard, Salt Lake City, for plaintiff and appellant.

Ted Cannon, Salt Lake City, for defendants and respondents.

STEWART, Justice:

The plaintiff, Ray Dodge, an inmate at the Utah State Prison, appeals an order of the district court dismissing his complaint for failure to state a claim upon which relief may be granted. His claim in the district court, and on appeal, is that he was denied his right to vote in Salt Lake County in violation of the Utah Constitution, and of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. He asserts that since he resides at the Utah State prison in Salt Lake County, he has a consitutional right to vote in that county.

On appeal from the dismissal of a complaint for failure to state a claim upon which relief may be granted, the allegations of the complaint are taken as true, and dismissal of the complaint should be affirmed only if it is clear that the plaintiff is not entitled to relief. *Allred v. Cook,* Utah, 590 P.2d 318 (1979); *Barrus v. Wilkinson,* 16 Utah 2d 204, 398 P.2d 207 (1965). We therefore assume for purposes of this appeal that the facts are as stated in the complaint.

Before Dodge was incarcerated in the Utah State Prison, he resided with his mother in Ogden, which is in Weber County, Utah. He was incarcerated in June, 1965. Some two years after his incarceration, his mother sold the house in which he and his mother lived. His mother is now deceased. All his worldly possessions are located at the Utah State Prison. Dodge alleges that he has "no home, no residence and no location to which he can return, nor which he considers a single 'home' or 'residence' to return to." In 1980, Dodge, as a Utah state prison inmate, registered and voted as a Salt Lake County resident by absentee ballot.

■ As a general proposition, both at common law and under our statutes, an intention to remain in a particular place indefinitely is a requirement for establishing residency. See U.C.A., 1953, § 20-2-14. Section 20-2-14(3) provides that a per-

son's oath on a registration form stating that his or her residence is within a specific voting district establishes a rebuttable presumption of an intention to remain in the district indefinitely, except in the case of an inmate.[1] In 1981, the statute under which Dodge had been allowed to vote in the 1980 election, § 20–2–14, was amended to provide that a person's "residence address" and "place of residence" which are given under oath on the registration form are presumptive evidence of a person's residency, except for prison or jail inmates. An inmate's voting residence was his place of residence prior to incarceration. Thus, Dodge's voting residence was Weber County, pursuant to § 20–2–14(1)(b), which provides that a person does not gain or lose a voting residence by virtue of being incarcerated in a jail or prison.[2] On May 12, 1981, the effective date of the amendment, the Salt Lake County Clerk removed Dodge's name from the Salt Lake County voter registration list.

On May 21, 1981, Dodge wrote a letter to the Salt Lake County Clerk's office inquiring whether he was still a registered voter in Salt Lake County. The county clerk responded by directing the plaintiff to re-apply and re-register as a voter in Salt Lake County, if legally appropriate. On July 9, 1981, the clerk wrote a letter to the warden of the Utah State Prison setting forth the policy of the Salt Lake County Clerk's office with respect to the registration of inmates at the prison pursuant to the 1981 amendment. A copy of the county clerk's letter was circulated to the inmates at the prison.

On October 13, 1981, Dodge completed the election registration form which is required for a voter to register by mail. He requested that he be registered in Salt Lake County. He also wrote a letter to the Salt Lake County Clerk's office requesting

a hearing if there were a question concerning his "registration form or about my residency." In reply, the Salt Lake County Clerk's office informed Dodge that he could register in Weber County. On October 19, 1981, the Weber County Clerk, on the basis of Dodge's election registration form, which apparently had been forwarded to Weber County by the Salt Lake County Clerk's office, registered Dodge as a voter in Weber County and informed him that he had been registered in that county and could obtain an absentee ballot from the Weber County Clerk's office. Dodge did not, however, request an absentee ballot from Weber County, apparently because he had insufficient time to receive the ballot and return it prior to election day. Consequently, Dodge did not vote in the November elections. Thereafter, he filed this suit.

Dodge contends that the refusal of the Salt Lake County Clerk's office to allow him to register to vote in Salt Lake County denied him the right to vote under the Utah Constitution and was a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. He further contends that Utah law allows an inmate to establish the State Prison as his voting residence, and that the Salt Lake County Clerk's office violated due process by striking his registration without a prior hearing, and that he is entitled to attorney's fees pursuant to 42 U.S.C. § 1988 (1976) because his claim is brought under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1981 (1976).

## I.

■ On appeal, Dodge first contends that he was denied his right to vote pursuant to Article IV, Section 2 of the Utah Constitution because his registration in

1. Although Dodge was allowed to vote in Salt Lake County in 1980, that did not prohibit the Legislature from establishing standards that have the effect of changing his residency.

2. Even before the amendment, § 20–2–14(1)(b) provided that a person "must not be held to have gained or lost a residence solely by reason

of his presence ... in any public prison ...." See Laws of Utah 1975, ch. 58. A 1983 amendment to § 20–2–14 appears to have specifically established an inmate's place of residence prior to his incarceration as his voting residence, irrespective of his intention. Laws of Utah 1983, ch. 106.

Salt Lake County was voided and re-established in Weber County "where he has no ties and has not resided for fifteen years, and could not vote except by absentee ballot under conditions that did not allow him sufficient time to cast his ballot."

Article IV, Section 2 of the Utah Constitution provides that "[e]very citizen of the United States, eighteen years of age or over, who makes proper proof of residence in this state for thirty days next preceding any election, or for such other period as required by law" is qualified as a voter in the State of Utah. The State Constitution has no provision disenfranchising felons except for those "convicted of treason, or crime against the elective franchise." Article IV, Section 6. Nor does it define the critical word "residence."

Dodge makes no contention that his right to vote was improperly burdened, conditioned or diluted. What he does claim is that he was deprived of the right to vote in any county election. He argues that he could not vote in Weber County because he was not in fact a resident of that county and he could not vote in Salt Lake County because he was not allowed to register there. However, Dodge was in fact registered in Weber County by the Weber County Clerk upon the referral of his papers by the Salt Lake County Clerk to the Weber County Clerk.

Dodge was not denied the right to vote as such. Had he taken timely action, he could have registered· in Weber County with sufficient time to have received an absentee ballot and cast his vote. While it is true that plaintiff did not have time to vote in Weber County, the defendants were no more responsible, if they were responsible at all, for the delay which resulted in Dodge's inability to complete the procedures necessary to cast an absentee ballot than was Dodge. It was his, not the county clerk's, obligation to see that the necessary steps were taken to register in time to cast an absentee ballot. The clerk's offices in both Salt Lake County and Weber County acted, as we read the record, in a manner intended to be helpful to Dodge and not

to frustrate him in his effort to vote. Therefore, Dodge was not denied the right to vote because he was registered in Weber County and could have voted there.

■ Dodge also contends that his right to vote in Salt Lake County was denied him in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Under that provision he argues that he was entitled to vote at his only place of residence which he asserts was Salt Lake County.

The right to vote is a fundamental constitutional right protected by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The right of prison inmates who are enfranchised under state law to vote is similarly protected by the Equal Protection Clause. *O'Brien v. Skinner*, 414 U.S. 524, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974); *Goosby v. Osser*, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Restrictions on a person's right to vote must be based upon a compelling state interest. *Harper v. Virginia Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Discriminatory classifications of voters must be essential in effectuating the state interest and less restrictive alternatives for effectuating the state's objective must not be available. *McLaughlin v. Florida*, 379 U.S. 184, 192, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964). Accordingly, the Utah statutory residency requirements must withstand strict scrutiny. However, even when strict scrutiny or compelling state interest standards apply, the Legislature does not lose all latitude in enacting laws governing residency requirements for voting purposes as long as the fundamental right to vote is not impaired, or an enactment is not intended to favor one group of voters over another. Specifically, the issue

is whether § 20–2–14(1)(b) lawfully makes Weber County Dodge's voting residence. Section 20–2–14(1)(b) states: "A person must not be held to have gained or lost a residence solely by reason of his presence ... *while involuntarily confined in any public prison or jail* .... " (Emphasis added.) Section 20–2–14(3) provides that the oath of a person upon a registration form that his address and place of residence is within a specific voting district "shall be presumptive evidence of his intention to remain in the state permanently or indefinitely, and such person shall be registered and allowed to vote unless . . . *such residence is an involuntarily confined person's address at a prison or jail.*" (Emphasis added.) Thus, the statutes establish a presumption of residency based on the registration form but that presumption does not apply to an inmate. An inmate's oath on a registration form, plus presence in the district while incarcerated, create no presumption of residency.

The long-standing common law rule is that a person cannot change his domicile solely as a result of involuntary confinement. *Cohen v. United States,* 297 F.2d 760, 774 (9th Cir.1962); *Bohland v. Smith,* 7 F.R.D. 364 (E.D.Ill.1947); *Neuberger v. United States,* 13 F.2d 541 (2d Cir.1926); *American Surety v. Cosgrove,* 40 Misc. 262, 81 N.Y.S. 945 (1903). The *Restatement (Second) of Conflicts* § 17 (1971) enunciates the principle:

Comment:

a. *Rationale.* Acquisition of a domicil [sic] of choice requires some free exercise of the will on the part of the person involved. An act done by him under physical compulsion or because of criminal or comparable sanctions will be legally ineffective for this purpose.

. . . . .

c. *Inmates of jails.* Under the rule of this Section, it is impossible for a person to acquire a domicil [sic] in the jail in which he is incarcerated. To enter jail, one must first be legally committed and

thereby lose all power of choice over the place of one's abode.

The Utah statutes referred to above do not, however, establish a *per se* rule prohibiting all inmates at the state prison from voting as residents of Salt Lake County. They implicitly contemplate that inmates who resided in Salt Lake County prior to their incarceration could continue to vote in Salt Lake County during the period of their incarceration. Indeed, § 20–2–14(1)(b) contemplated that a prisoner might even be able to change his voting residence to a place of incarceration. That section only prohibits such a change "solely by reason of his presence ... in any public prison or jail...."

Although legal or physical restraints may require or compel a person to live in a particular place, that place may, nevertheless, in certain circumstances, be considered a residence. *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1956) (member of armed services "resided" where he had a house, family and small business); *Coulombre v. Board of Registrars,* 3 Mass.App. 206, 326 N.E.2d 360 (1975) (patient at state hospital had employment and bank account). In those cases, however, the voters had more contact with the communities in which they resided than mere compulsory, close confinement. The law requires something more than a mere assertion by an inmate that he intends to change his voting residence to a new place from his prior residence.

Although the plaintiff has been in prison so long that the contacts he once had in Weber County have ceased to exist, he has not established any relationship whatsoever with Salt Lake County other than the fact that he is there by virtue of his incarceration in the state prison. The plaintiff does not allege that he has acquired any real property or personal property in Salt Lake County, that he has any family living in Salt Lake County, or that he has established any other contacts in Salt Lake County. Nor does it appear that he pays any county taxes or is subject to any of Salt Lake County's laws. In short, he has

no contacts whatsoever in Salt Lake County that would suffice to establish Salt Lake County as his residence. Cases such as those allowing members of the armed forces to establish a new voting residence in a place where they have been compelled to reside, have all found that the individuals involved had significant contacts within the jurisdiction in which they asserted the right to vote beyond their mere physical presence. *E.g., Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *Coulombre v. Board of Registrars,* 3 Mass.App. 206, 326 N.E.2d 360 (1975).

This state's criteria specifying the voting residency for inmates takes into account the fact that inmates, with few exceptions, are lodged in the prison for a temporary period of time. While at the prison all prisoners are treated exactly the same for voting registration purposes; one class of prisoners is not treated differently from another class. *Compare Arlee v. Lucas,* 55 Mich.App. 340, 222 N.W.2d 233 (1974).

In the instant case, it is true that Dodge's contacts with Weber County are non-existent, but no more so than his contacts with Salt Lake County, except for his confinement. Dodge does not even allege that upon release from prison he intends to make Salt Lake County his domicile or residence.

Under these circumstances, there is no violation of the Equal Protection Clause. The State's interest in establishing voting residency requirements that are based on a place with which the voter has his closest and most enduring ties is a compelling interest. The State's interest and the individual voter's interest coincide in assuring a voter the right to be able to cast his ballot for those public officials who will have the most influence on the voter's life. Perforce, the registration laws that protect that interest must be general in nature,

with the consequence that the contact that a particular individual has with his legal voting residence may, in some cases, be somewhat attenuated. But that is inevitable. In our view, there is no less restrictive means available to accomplish the State's objective with respect to prisoners than to provide that the county of residence prior to incarceration is an inmate's voting residence, absent a strong showing by the inmate that he has changed his residence—a showing not attempted here.

Certainly neither the state constitutional right to vote nor the Equal Protection Clause, even under the strict scrutiny test, requires a state to establish a voting residence of an inmate in a county simply because he declares that county to be his residence or because that county becomes his place of abode for an indefinite period of time by operation of the penal laws.[3] A contrary rule would permit inmates to have a voice in the affairs of governmental entities which have no authority to affect their lives in any way. In substance, such a rule would also give an inmate a choice between two voting residences, a choice not accorded any other citizen.

In view of the law generally applicable to all citizens that one retains his residence or domicile until he acquires a new one, *e.g., Eau Claire County v. Milwaukee County,* 24 Wis.2d 292, 128 N.W.2d 666 (1964); *Restatement (Second) of Conflicts* § 19 (1971); 28 C.J.S. *Domicile* § 13 (1941), and the absence of *any* facts connecting Dodge with Salt Lake County beyond the plaintiff's physical presence at the state prison, the defendants did not err in holding Dodge's voting residence to be in Weber County and that holding did not violate the Equal Protection Clause.[4]

## II.

▪ Dodge also argues that he was denied procedural due process because the

---

**3.** The rule may well be otherwise where the inmate seeks to establish domicile for purposes of a divorce action. *See McKenna v. McKenna,* 282 Pa.Super. 45, 422 A.2d 668 (1980).

**4.** The one provision in the code which prohibits all inmates from voting in *municipal* elections

while confined in a jail or a prison within the municipality unless the prisoner was a resident prior to confinement or incarceration, is § 20–5–6. However, the plaintiff does not challenge the constitutionality of that provision.

Salt Lake County Clerk's office struck his name from the list of qualified voters in Salt Lake County without notice or opportunity for a hearing because of the amendment to § 20–2–14 that went into effect in May, 1981. If a person alleges that he or she has been deprived of a constitutional right, and there are disputed facts with respect to the establishment of that right, he or she has a constitutional right to a hearing. However, when all the facts relevant to the establishment of that right are undisputed, as in this case, and a change in a person's status occurs solely because the law has changed, there is no constitutional requirement that a hearing be held. *Concerned Parents of Stepchildren v. Mitchell*, Utah, 645 P.2d 629, 636 (1982). In this case, we have taken the facts as Dodge claims them to be.

Furthermore, Dodge could have obtained a hearing by filing an action in the district court prior to the 1981 election to test his constitutional theory. Due process does not require an administrative hearing when a judicial hearing is available simply for the asking.

Because Dodge did not prevail in this action, he is not entitled to attorney's fees under 42 U.S.C. § 1988 (1976).

Affirmed. No costs.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.