**STATE of Utah, Plaintiff and Respondent,**

v.

**Douglas D. BISHOP, Defendant and Appellant. (Three Cases)**

**Nos. 19733, 19797 and 19847.**

Supreme Court of Utah.

March 31, 1986.

---

Gregory M. Warner, of Alrich, Nelson, Weight & Esplin, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra Sjogren, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The defendant was found guilty and mentally ill on three counts of sodomy on a child in violation of U.C.A., 1953, § 76–5–403.1 in three separate trials and sentenced to three concurrent indeterminate sentences of five years to life. The minimum five-year sentences are mandatory, unlike most minimum terms under the state's general indeterminate sentencing scheme for most crimes.

On this appeal, the defendant challenges the constitutionality of section 76–5–403.1,[1] which fixes the maximum prison sentence at life and the minimum sentence at a mandatory five years, ten years, or fifteen years without possibility of parole until the minimum sentence imposed has been served. The defendant argues that the statute is unconstitutional because it 1) infringes inherent powers of the courts to suspend sentences; 2) invades the constitutional powers of the Board of Pardons to set parole dates; 3) constitutes a "special law," in violation of Article VI, section 26 of the Utah Constitution; 4) denies the

---

1. That section states:
   (1) A person commits sodomy upon a child if the actor engages in any sexual act upon or with a child who is under the age of 14, involving the genitals of the actor or the child and the mouth or anus of either person, regardless of the sex of either participant.

   (2) Sodomy upon a child is punishable as a felony of the first degree, by imprisonment in the state prison for a term which is a minimum mandatory term of 5, 10, or 15 years and which may be for life.

defendant the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and Article I, section 24 of the Utah Constitution; and 5) violates the cruel and unusual punishment provision of the Eighth Amendment to the United States Constitution and Article I, section 9 of the Utah Constitution because a life sentence with a minimum mandatory five-year prison term is unconstitutionally disproportionate to the crime of sodomy upon a child, and because the defendant has not been afforded adequate psychiatric care.

In cases number 19847 and 19797, the defendant's act of sodomy was fellatio with a 13-year-old boy, and in case number 19733, the defendant committed acts of fellatio with an 11-year-old boy in which both the defendant's and the victim's genitals and mouths were involved.

Two experts in forensic mental health testified that the defendant suffers from chronic pedophilia, which is classified as a psychosexual behavioral disorder in the Diagnostic and Statistical Manual. They both considered him mentally ill, but able to understand the nature of his acts and to conform them to the requirements of law. They also testified that he poses a threat to others, especially young boys. He is, however, able to provide the basic necessities of life for himself.

## I. THE MINIMUM MANDATORY SENTENCING SCHEME AND THE INHERENT POWER OF THE JUDICIARY

■ Defendant asserts that U.C.A., 1953, § 76–5–403.1 infringes the separation of powers provision of Article V, section 1 of the Utah Constitution because the minimum mandatory sentencing statute removes the power of trial judges to suspend sentences in violation of inherent prerogatives of the judiciary.

The challenged statute does not permit a judge to suspend the sentence of a defendant convicted of child sodomy. Section 76–5–403.1 requires "imprisonment in the state prison," and section 76–3–406 specifically

states "that imposition of sentence shall not be suspended ... for any person who commits a felony of the first degree involving ... sodomy upon a child, a violation of § 76–5–403.1[.]"

The defendant relies heavily upon *State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971), in which the Idaho Supreme Court held that judicial authority to suspend a sentence existed at common law and was a fundamental and inherent power of the judiciary. *Id.* 486 P.2d at 251. Although there may be strong reasons why a judge should have power to suspend a sentence, and usually has that power by statute, the generally accepted law is that it is the legislature which has the power to define crimes and to prescribe punishments, within certain constitutional limits not pertinent here.

Contrary to *McCoy*, in *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed.2d 129 (1916), the United States Supreme Court concluded that courts did not possess that power under the common law, and that such a power was inconsistent with the power of the Legislature to fix sentences for violation of the law. *Id.* at 41–45, 37 S.Ct. at 74–76. The Court noted that despite a division of authority among the state courts, a majority had held that courts have no inherent power to permanently suspend a statutorily defined sentence. The Court cited a Utah case, *People v. Blackburn*, 6 Utah 347, 23 P. 759 (1890), for the proposition that although a judge has the inherent power to suspend a sentence temporarily for specific purposes, such as allowing a defendant time to petition for a pardon, "[t]he authority to wholly relieve parties from a conviction for crime is not given to the courts, but belongs to the pardoning power." *Id.* at 349, 23 P. at 760. *See Ex Parte United States*, 242 U.S. at 47 n. 1, 37 S.Ct. at 76 n. 1.

After statehood, this Court reaffirmed that principle in *In re Flint*, 25 Utah 338, 71 P. 531 (1903), and *Mutart v. Pratt*, 51 Utah 246, 170 P. 67 (1917). In *Mutart*, the Court stated:

That the Legislature of this state has the sole power to fix the punishment to be inflicted for a particular crime, with the limitation only that it be not cruel or excessive, will not be questioned. That it may fix any punishment, subject to the above limitation, and leave no discretion whatever in the courts as to the extent or degree of punishment is a well-recognized and universally accepted doctrine, and under a statute fixing a definite period the court has no more discretion as to the punishment than the police officer whose duty it is to carry the punishment into effect, . . . .

*Id.* at 250, 170 P. at 68. Again, in *Williams v. Harris*, 106 Utah 387, 149 P.2d 640 (1944), we affirmed that principle. *But see State v. Barlow*, 25 Utah 2d 375, 483 P.2d 236 (1971). These precedents control the instant case.[2]

## II. THE MINIMUM MANDATORY SENTENCING SCHEME AND THE POWER OF THE BOARD OF PARDONS

■ The defendant also asserts that the minimum mandatory sentencing scheme infringes the constitutional powers of the Board of Pardons under Article VII, section 12 of the Utah Constitution and for that reason also violates the principle of separation of powers.

Prior to its amendment in 1980, Article VII, section 12 allowed the Board of Pardons to grant parole "upon such conditions, and with such limitations and restrictions as they [*i.e.*, the members of the Board] deem proper[.]" Because of the breadth of this power, pre-1980 decisions of this Court can be read as treating the Board of Pardons as, in effect, a fourth branch of government. *See, e.g., State v. Barlow*, 25 Utah 2d 375, 483 P.2d 236 (1971); *Cardisco v. Davis*, 91 Utah 323, 64 P.2d 216 (1937); *State ex rel. Bishop v. State Board of Corrections*, 16 Utah 478, 52 P. 1090 (1898). *See also Graham v. Thompson*, 246 F.2d 805 (10th Cir.1957).

However, in 1980, an amendment to Article VII, section 12 narrowed the power of the Board of Pardons by striking the above-quoted language and substituting language which made the Board's power to grant parole subject to "such conditions as may be established by the Legislature. . . ." Thus, the Legislature is specifically authorized to enact standards governing when persons convicted of various crimes are eligible for parole. With that fundamental change in the constitutional powers of the Board of Pardons, the Legislature is clearly authorized to require that certain classes of criminals serve specified minimum terms of imprisonment before becoming eligible for parole by the Board of Pardons.

The defendant also contends that the 1980 amendment was invalidly adopted because of certain procedural defects. We find no procedural errors in the manner in which the amendment was submitted to the people and voted upon. That the Legislature was aware of the intended effect of the amendment is clear from the defendant's own brief, which cites the *Report of the Constitutional Revision Commission, Submitted to the Governor and the 42d Legislature of the State of Utah.* That document states that the amendment was designed "to allow the Legislature to create a uniform parole and probation system" and to overrule the proposition that "the current Board of Pardons operates as a fourth independent branch and can adopt the policy for ... granting pardons." *Id.* at 32.

The defendant further argues that the sentencing scheme for the crime of child sodomy does not comport with the intent of requiring the Legislature to create a "uniform" system for parole. *Compare id.* with U.C.A., 1953, §§ 77–27–2, 77–27–7. The defendant admits, as he must, that a "uniform parole ... system" cannot mean that all prisoners must be paroled after serving the same amount of time. Rather, he claims that by requiring one category of

2. There may be times, however, when imposition of a particular sentence would constitute cruel and unusual punishment in a particular case, and a court could refuse to impose a particular punishment or could relieve a defendant from further punishment.

convicts to serve a complete minimum sentence before becoming eligible for parole, while allowing other convicts to become eligible for parole prior to the expiration of the minimum sentence, the Legislature has created an inherently nonuniform system of parole. We disagree.

■ In the first place, the plain language of the amendment does not require that the parole system be uniform. Furthermore, a rational parole system necessarily requires classifications based on the nature of the crime, the likelihood of recidivism by those who commit a particular type of crime, the potential dangerousness of the particular type of criminal when released, and other factors bearing on the penal purposes of rehabilitation, deterrence, retribution, and protection of the public. It is not unreasonable to impose a minimum mandatory sentence on a person convicted of a crime when the danger to individuals and society is great and the risk of recidivism is high, as it appears to be with child sodomy offenses.

## III. THE PROHIBITION AGAINST SPECIAL LAWS AND THE SENTENCING STATUTE

■ The defendant also contends that section 76–5–403.1 is a special law which violates Article VI, section 26 of the Utah Constitution. That section provides that "[n]o private or special law shall be enacted where a general law can be applicable."

The general prohibition against special laws is similar to the uniform operation of the laws provision, Article I, section 24, which is founded on the same general principles as the federal equal protection of the laws provision. *Malan v. Lewis*, Utah, 693 P.2d 661 (1984); *Baker v. Matheson*, Utah, 607 P.2d 233, 243 (1979). Although there are both similarities and differences between Article I, section 24 and Article VI, section 26, this is not an appropriate occasion to explore either the similarities or the differences between the two. It is enough for present purposes to refer to *Utah Farm Bureau Insurance Co. v. Utah In-surance Guaranty Association*, Utah, 564 P.2d 751 (1977), where we declared:

> A general law applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to themselves in the matters covered by the laws in question. On the other hand, special legislation relates either to particular persons, places, or things or to persons, places, or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied.

*Id.* at 754. *Hulbert v. State*, Utah, 607 P.2d 1217 (1980), stated that Article VI, section 26, which prohibits a special law "where a general law can be applicable," in fact permits a special law in limited circumstances. If a special law is required to achieve a reasonable and legitimate legislative end, the enactment is not necessarily barred by Article VI, section 26. It is the unreasonable isolation of an individual, or a group of individuals, from the general class of persons with whom they are similarly situated, or the application of legislative power to subjects that are not legitimately of legislative concern, that makes a statute an impermissible special law. *Hulbert v. State, supra*, 607 P.2d at 1223–24; *Utah Farm Bureau Ins. Co. v. Utah Insurance Guaranty Association, supra*, 564 P.2d at 754.

Section 76–5–403.1 defines a crime and fixes the punishment for that crime. All people convicted of the crime are treated similarly by the statute. There is a reasonable basis, as indicated below, for distinguishing between those who commit child sodomy and those who commit other offenses. *See* section IV *infra*.

## IV. EQUAL PROTECTION

The defendant further argues that the statute unconstitutionally discriminates against him and therefore denies him equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Article I, section 24 of the Utah Constitution.

A fundamental principle of both state and federal equal protection provisions is that the law should treat persons who are similarly situated in a similar fashion, and persons who are dissimilarly situated should be treated dissimilarly. *E.g., McLaughlin v. State of Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *United States v. Burnison,* 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675 (1950); *Malan v. Lewis,* Utah, 693 P.2d 661, 669 (1984); *Baker v. Matheson,* Utah, 607 P.2d 233, 243 (1979). Equal protection of the law provisions do not preclude people from being treated differently under the law as long as there is a reasonable basis for the difference. The latitude accorded the Legislature in making classifications turns on the subject matter of the statute and its objectives. If the statute deals with certain particularly sensitive constitutional values or discriminates based on suspect classifications, the Legislature's latitude is substantially narrowed. *See Dodge v. Evans,* 716 P.2d 270 (1985). The threshold legal question, therefore, is the degree of flexibility or latitude that the Legislature should be accorded in making the statutory classifications that it has made in treating child sodomizers differently from most other criminals in this state.

We need not again review the various standards of review applied in equal protection analysis. It is sufficient to say that neither sex offenders, nor criminal offenders generally, constitute a suspect class entitled either to a heightened or an intermediate level of scrutiny.[3] Nor is parole a

fundamental constitutional right that requires an elevated standard of review. Our calipers for measuring appropriate prison sentences for various offenses are at best approximate in their measurements, and always somewhat subjective in nature.

Concededly, the minimum mandatory sentence provision of section 76–5–403.1 discriminates against child molesters in denying them any opportunity for parole before expiration of the minimum sentence imposed. Very few other prison sentences in this state have a mandatory minimum term.

In arguing its unconstitutionality, however, the defendant states no reason and refers to no pertinent authority which supports the proposition that the statute should not be given the traditionally broad deference generally accorded statutes fixing different sentences for different crimes under equal protection provisions. *See generally Tigner v. Texas,* 310 U.S. 141, 147–48, 60 S.Ct. 879, 882–83, 84 L.Ed.2d 1124 (1940).[4] All that is required is that the statute have a reasonable relationship to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *State v. Amicone,* Utah, 689 P.2d 1341, 1343 (1984). *See also Williams v. Walsh,* 222 U.S. 415, 325 S.Ct. 137, 56 L.Ed. 253 (1912); *State v. Clark,* Utah, 632 P.2d 841 (1981).

Oral sex by or upon a child is likely to have long-term and perhaps lifetime, dele-

---

3. The defendant cites *Meloon v. Helgemoe,* 564 F.2d 602 (1st Cir.1977), in which New Hampshire's statutory rape law was subjected to heightened scrutiny and held to be unconstitutional. The statute was subjected to heightened scrutiny, however, not because it dealt with a sexual crime, but rather because the statutory classification was not gender neutral and made the crime of statutory rape applicable only to men. *But see Michael M. v. Superior Court,* 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), where the United States Supreme Court upheld a gender discriminatory statutory rape law as constitutional. The part of the Utah child sodomy law that is at issue here is gender neutral, and heightened scrutiny, therefore, is inappropriate.

4. It may be argued that a minimum mandatory sentence directly affects a person's liberty interest, and that is true in one sense. But upon conviction of a crime, the defendant forfeits his liberty interests and is subject to physical restraint and detention. Therefore, the defendant's interest under the equal protection provisions of the law is not the "fundamental" constitutional interest of liberty which might well invoke a higher equal protection standard of review. The more general interest is that he not be subject to unreasonable or invidious discrimination statutes, which is not the case here.

terious effects upon that child. The State has a strong interest in protecting children from sexual abuse and exploitation. A minimum mandatory sentence may reasonably be expected to promote that objective in several ways.[5] First, a minimum mandatory sentence is likely to have a substantially greater deterrent effect than an indeterminate sentence subject to early termination by the Board of Pardons. Second, a minimum mandatory sentence is likely to provide child molesters, both those who have been convicted and those who have not been prosecuted, a greater incentive to reform. Finally, because therapy and other rehabilitation efforts have not proved very successful with molesters, it is reasonable to isolate offenders from society for a longer period of time to reduce the potential for future offenses.

■ We hold that the minimum mandatory sentence provision in section 76–5–403.1 has a reasonable relation to a legitimate state interest and does not constitute an unconstitutional discrimination.

## V. CRUEL AND UNUSUAL PUNISHMENT AND THE DENIAL OF MEDICAL TREATMENT

The defendant contends that because he is ineligible for immediate participation in the sex offenders program at the state prison, which is only available three years prior to a convict's release from prison, the minimum mandatory sentencing provision of section 76–5–403.1 constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article I, section 9 of the Utah Constitution. Section 76–5–403.1 provides for a minimum mandatory sentence; it does not deal with eligibility for participation in the sex offenders program. The defendant's argument seems to be that under the cruel and unusual punishment provision of the State and Federal Constitutions, he can only be sentenced for a term

equivalent to the time he can spend in the sex offenders program.

We have not heretofore defined the meaning of the Utah Cruel and Unusual Punishment Clause of Article I, section 9. However, it is plain on the face of Article I, section 9 that the Utah provision is broader than its federal counterpart. Section 9 states:

Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor.

Except for punctuation and insignificant stylistic changes, the Utah provision tracks the federal provision exactly, except for the last sentence of section 9. Of course, we are free in appropriate circumstances to give the Utah provision a broader interpretation. That is even suggested by the last sentence of section 9, which states: "Persons arrested or imprisoned shall not be treated with unnecessary rigor." That state constitutional guarantee has no counterpart in the Eighth Amendment. We need not in this case fully explicate the content and limitations of section 9; that is a task better done on a case-by-case basis. Nevertheless, we note that the last sentence of the Utah cruel and unusual punishment provision contained in section 9 is broader than the comparable federal provision. For present purposes, we need only hold that the Utah and the federal cruel and unusual punishment provisions apply to this case in the same fashion. To determine how they apply, we look primarily to federal case law.

■ We hold that the cruel and unusual punishment provisions of the State and Federal Constitutions do not prevent the State from incarcerating the defendant for a term longer than the time required to complete the state prison's sex offenders program. Incarcerating a prisoner for a

---

**5.** There is some evidence that molested children may grow up to become molesters themselves so that the tendency to molestation is carried forward from generation to generation. *See*

Prager, *"Sexual Psychopathy" and Child Molesters: The Experiment Fails,* 6 J.Juv.L. 49, 64 (1982).

term longer than it takes to complete a particular rehabilitation program is not cruel and unusual punishment. Incarceration may be for purposes other than rehabilitation. The State may incarcerate for one or more of a number of other purposes.

*Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), does not hold, as suggested by the defendant, that the cruel and unusual punishment provision requires immediate psychological or psychiatric treatment for all who assert a need for such treatment. *Estelle* held that "deliberate indifference to serious medical needs of prisoners" could constitute cruel and unusual punishment. *Id.* at 104, 97 S.Ct. at 291. That rule has been extended to include psychological or psychiatric care as well as physical medical care. *E.g., Ramos v. Lamm,* 639 F.2d 559, 574, 577–78 (10th Cir.1980); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 763 (3rd Cir. 1979); *Bowring v. Godwin,* 551 F.2d 44, 47 (4th Cir.1977).

The defendant argues that he is presently entitled to psychiatric treatment but that under section 76–3–401, the time he spends in a hospital, whether for psychiatric or medical attention, may not be allowed to count toward satisfaction of his minimum mandatory sentence under section 76–5–403.1. Section 76–3–406 (Supp.1983) states:

> [H]ospitalization may not be ordered, the effect of which would in any way shorten the prison sentence for any person who commits a felony of the first degree involving: ... sodomy upon a child, a violation of § 76–5–403.1....

The argument neither raises an issue of cruel and unusual punishment, nor is it correct. Section 76–3–406 does not deprive the defendant of necessary professional treatment, and it does not mandate that time spent in a hospital during a prison term be considered "dead" time, *i.e.,* time that does not count toward completion of the sentence. Rather, the section merely precludes the shortening of a minimum sentence by a commitment of a defendant to a hospital prior to or during his prison term. In short, the defendant must spend a minimum of five years in the custody of the State. If he is committed to a hospital for a particular mental illness and pronounced cured of that illness before the five-year minimum term has run, he still must serve the full prison sentence imposed. That is not to say, however, that a person who is committed to the prison and then is transferred to a hospital loses credit for the time spent in the hospital.

The defendant's constitutional attack on section 76–5–403.1 is meritless. He has been committed to prison, and although he is not eligible for admission to the state sex offenders program until three years prior to his release date, the defendant may, nonetheless, seek psychiatric or psychological treatment at any time for a serious physical or psychological problem requiring immediate treatment.

That a prisoner requests psychiatric care prior to the time he is eligible for the prison's sex offenders program and is denied admittance to that program or other psychiatric therapy for the same condition the sex offenders program is designed to deal with, does not necessarily run afoul of the Eighth Amendment or Article I, section 9. It may be arguable that denying psychiatric treatment to one who has been found guilty and mentally ill, as in the instant case, violates the prisoner's rights to adequate medical care but that is an issue apart from the constitutionality of the sentencing statute and the imposition of a sentence under it. *Cf. People v. White,* Colo., 656 P.2d 690, 695 (1983). A conviction of guilty and mentally ill does not *ipso facto* entitle the defendant to be committed to the state hospital rather than the state prison. Whether the defendant is entitled to psychiatric treatment as a matter of right at this time is a factual issue that would have to be explored in an independent proceeding. *See Hughes v. United States,* 308 A.2d 238, 242–43 (D.C. Cir. 1973).

## VI. CRUEL AND UNUSUAL PUNISHMENT AND THE MINIMUM MANDATORY SENTENCING STATUTE FOR SODOMY ON A CHILD

Finally, the defendant contends that section 76–5–403.1 is unconstitutional because

the punishment is so inherently disproportionate to the offense that it constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article I, section 9 of the Utah Constitution.

In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." In determining whether a sentence is disproportionate, the courts must consider the following factors: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3011. *See also State v. Amicone,* Utah, 689 P.2d 1341 (1984).

Only rarely will a statutorily prescribed punishment be so disproportionate to the crime that the sentencing statute is unconstitutional. Since sentencing statutes are necessarily based on numerous, imprecise considerations, substantial deference must be accorded to the prerogatives of legislative power "in determining the types and limits of punishments for crimes." *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009.

In *Solem,* the Supreme Court held a life sentence unconstitutional. The sentence was based on a defendant's uttering a $100.00 bad check and the state's recidivist statute. By contrast, the defendant in the instant case was thrice convicted of sodomy on children. Nevertheless, on the basis of *Solem,* the defendant attacks the facial validity of section 76–5–403.1(2) (Supp. 1983), which requires that a defendant be sentenced to "a minimum mandatory term of 5, 10, or 15 years and which may be for life."

The defendant first asserts that the statute, in effect, provides for a minimum mandatory sentence of *life.* The defendant misconstrues the statute. Almost all Utah prison terms are indeterminate. The phrase in section 76–5–403.1(2) "and which

may be for life" is used to describe the maximum sentence that a prisoner may be required to serve for all felonies of the first degree; on its face it is not a minimum mandatory term. In short, section 76–5–403.1(2) authorizes an indeterminate term, with a maximum of a life sentence and a minimum mandatory term of five, ten, or fifteen years. The maximum penalty to which the defendant could have been sentenced but was not, was a mandatory term of a minimum of fifteen years and a maximum of life.

■ This sentencing scheme is not unconstitutional under the three-part test enunciated in *Solem.* The first inquiry is whether the harshness of the penalty corresponds with the gravity of the offense. Any analysis which purports to balance the suitability of a particular penalty against the seriousness of a particular criminal act is necessarily dependent on numerous factors and at best is imprecise. As a general proposition, it is possible to rely on broad generalizations as to the relative gravity of certain kinds of offenses and the harshness of certain kinds of penalties. *See Solem v. Helm,* 463 U.S. at 290–94, 103 S.Ct. at 3009–12. Thus, it is generally accepted that murder is more serious than other crimes. For the most part, crimes against persons are more serious than crimes against property, and crimes of violence are more culpable than those that do not involve violence. *Id.* Crimes against children are usually looked upon as more heinous than those committed against adults, and intentional crimes are more blameworthy than crimes committed by negligence. *Id.* at 293, 103 S.Ct. at 3011.

Likewise, it is generally conceded that there are differences in the types of punishments imposed by the law. The penalty of death is different from all other penalties. *Furman v. Georgia,* 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring). Life imprisonment is considered worse than a term of years, *see Solem v. Helm,* 463 U.S. at 294, 103 S.Ct. at 3011, which in turn is considered worse than a mere fine. *Cf.*

*Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The availability of parole and its timing are also factors to be considered. *Solem v. Helm,* 463 U.S. at 297, 103 S.Ct. at 3013; *Rummel v. Estelle,* 445 U.S. 263, 280–81, 100 S.Ct. 1133, 1142–43, 63 L.Ed.2d 382 (1980).

Sodomy on a child is a crime against a person which is likely to have long-term effects on its victims and even perhaps the children of victims. The crime is intentional and is necessarily inflicted upon the most defenseless and innocent of human beings. Even though the crime involves no physical violence, the psychological and developmental damage that may be done is often long lasting, and even permanent. There is reason to believe that the victims of such crimes are likely to become victimizers of others when they mature. Prager, *"Sexual Psychopathy" and Child Molesters: The Experiment Fails,* 6 J.Juv.L. 49, 63–64 (1982). Thus, a molester's crime against a child may cause long-term serious harm to the victim and to others as well. It is reasonable, therefore, to view such crimes as particularly serious crimes. *See Solem v. Helm,* 463 U.S. at 292–93, 103 S.Ct. at 3010–11.

The defendant was sentenced to concurrent indeterminate sentences of from five years to life. The maximum part of the indeterminate sentence, *i.e.,* life, is the same as for every other first degree felony in Utah. However, the minimum mandatory sentence provision is unlike most other sentences imposed by law in this state.

Although the mandatory minimum sentence may be more severe than sentences imposed by some other states, it is, in our view, justified by the effects of the crime on the victims, the prevalence of the crime in society, the defenselessness of the victims, and the high degree of recidivism by offenders. We have no jurisprudential scales by which we can precisely balance the appropriate punishment against a given crime, but in our view there is a rough parity between the gravity of the offense of sodomy on a child and the harshness of the minimum mandatory penalties.

The next factor to be considered under *Solem* is the comparability of other sentences imposed for other similar crimes. Our analysis of this factor overlaps substantially with our analysis of the gravity of the offense and the harshness of the penalty. Sodomy upon a child is a first degree felony in Utah. Second degree murder, U.C.A., 1953, § 76–5–203, aggravated burglary, U.C.A., 1953, § 76–6–203, aggravated robbery, U.C.A., 1953, § 76–6–302, and child kidnapping, U.C.A., 1953, § 76–5–301.1, are all first degree felonies for which the prescribed penalty is an indeterminate term of from five years to life. These crimes require actual or threatened physical injury or coercion.

Unlike most or all of the above crimes, the child victim is, for all practical purposes, defenseless against adults who either implicitly or explicitly intimidate the child, or otherwise overbear the will of the child and so take advantage of the innocence and powerlessness of the child.

Sodomy upon a child is also a crime which is widespread, often constitutes a severe assault on a child's psyche and a child's body, and may well have severe long-term consequences for its victims. Other sex crimes, especially those involving children, are also punished severely under Utah law. Thus, aggravated sexual assault, § 76–5–405, rape of a child, § 76–5–402.1, and object rape of a child, § 76–5–402.3, are subject to the same punishment as sodomy on a child.

Although these crimes are crimes of force, the absence of force in a child sodomy case does not imply consent on the part of the child victim. Rather, it generally amounts to submission by the child for a variety of reasons which do not lessen the harmful effect of the act.

Since the length of a prison term for sodomy upon a child may be as long as for any other Utah crime and a convicted defendant must also serve a minimum mandatory term of five, ten, or fifteen years, the loss of eligibility for parole during the term of the minimum sentence is also relevant to the constitutionality of the statute. "The

possibility of parole may complicate the comparison, depending upon the time and conditions of its availability." *Solem v. Helm*, 463 U.S. at 294 n. 19, 103 S.Ct. at 3012 n. 19; *see also Rummel v. Estelle*, 445 U.S. at 280–81, 100 S.Ct. at 1142–43.

The defendant argues that even second degree murderers, although sentenced to an indeterminate term of five years to life (albeit without a minimum mandatory term), are eligible for parole at a date earlier than those convicted of sodomy upon a child. However, the defendant does not contend that second degree murderers are generally released on parole before they have served five years in prison. Furthermore, the rate of recidivism among second degree murderers is not thought to be as high as among those who commit sex offenses with children. Reasonable limitations placed on eligibility for parole for valid legislative reasons do not make an otherwise constitutional sentencing scheme cruel and unusual punishment. *See Solem v. Helm*, 463 U.S. at 299 n. 26, 103 S.Ct. at 3014 n. 26.

█ Finally, a comparison of Utah's prescribed sentence for sodomy upon a child with the sentences imposed for the same crime in other jurisdictions is also indicative of the reasonableness of the Utah statute.[6] However, we note that other states define similarly entitled crimes differently, and use different sentencing schemes, so that such an analysis is at best difficult. Indeed, the parties to this appeal are unable to agree on what offense the defendant would have been charged with in over a dozen states. Our own research leads us to disagree with both parties' briefs in several instances, even with respect to some states as to which the parties were in agreement. For example, both parties

agreed that in Arkansas the defendant would have been charged with sodomy under Ark.Stat.Ann., § 41–1813, which, pursuant to section 41–901, carries a maximum penalty of one year. However, it appears that the defendant might also have been charged with carnal abuse in the first degree, under section 41–1804, which carries a two- to ten-year penalty pursuant to section 41–901.

Despite difficulties in determining exactly what crime the defendant would have been charged with elsewhere, a reasonably clear picture emerges of the range of penalties to which he would have been subject. In many states, he would have been subject to relatively light penalties, particularly for the offenses involving the two victims who were over age thirteen. In Massachusetts, for instance, the penalty could have ranged from a $100 fine to a maximum of five years in prison, with the possibility of parole. Mass.Gen.Laws Ann. ch. 272, § 35A. On the other hand, in Idaho and Texas, the defendant could have received a maximum life sentence for any one of his acts, while in Kentucky, North Carolina, Tennessee, and Virginia he could have received a life sentence for sodomizing his youngest victim, who was under age twelve. In addition, at least three states, North Carolina, Tennessee, and Washington, impose minimum mandatory sentences on those who commit the same offense as did the defendant in this case.

In *Solem*, the defendant could only have been subjected to as harsh a penalty in one other state, which would not likely have imposed the sentence. "It appears that Helm was treated more severely than he would have been in any other State." *Solem v. Helm*, 463 U.S. at 299–300, 103 S.Ct.

---

**6.** We reject the defendant's contention that *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), establishes that unless a penalty is no more severe than those in at least one-third of the states, it is presumptively invalid. Such a benchmark would lead to an unreasonable consequence. Whatever the crime, the state with the highest penalty would be automatically disproportionate. Once that state's statute was successfully challenged, the next most severe statute would become suspect, then the next, and so on until either the least severe statutory punishment was reached or the states agreed upon a common punishment. States must necessarily have reasonable freedom to select what crimes they wish to punish and the nature of the punishments they impose. *See Solem v. Helm*, 463 U.S. at 308, 103 S.Ct. at 3019 (Burger, J., dissenting).

at 3014–3015. We are not faced with that situation here. The defendant could have received similar sentences in many other jurisdictions. Where, as here, there is a very broad range of potential sentences reflected in the statutes of the various states, a general comparison among those statutes is of little use.

The penalties authorized by other states do not suggest that the Utah statute is unconstitutionally disproportionate. "[T]he concept of cruel and unusual punishment is not rigid but acquires meaning from the evolving standards of decency which mark the progress of a maturing society." *State v. Freeman,* 223 Kan. 362, 574 P.2d 950, 955 (1978). Judicial analysis under the cruel and unusual punishment provision of our constitutions must reflect "evolving standards of decency." We see nothing in the policies adopted by other states in dealing with the type of crime involved in this case that suggests Utah's policy is so unusual as to suggest it is beyond current societal norms or disproportionate to the nature of the crime. That the policies of some other states are different from Utah's is a mark of federalism, not unconstitutionality.

For the above reasons, the defendant's sentence under the sentencing scheme for those convicted of sodomy on a child "is not one of those rare cases where the harshness of the sentence is [so] disproportionate to the nature of the crime" that it constitutes cruel and unusual punishment. *State v. Amicone,* Utah, 689 P.2d at 1343; *Solem v. Helm,* 463 U.S. at 290, 103 S.Ct. at 3009.

Affirmed.

HALL, C.J., and HOWE, J., concur.

DURHAM, Justice (concurring in the result):

I concur in the result of the majority opinion and in the analysis contained in sections I, II, III and VI. I do not, however, subscribe to the treatment of the state constitutional provisions afforded in sections IV and V, although I agree with the analysis under federal law. In section IV, the majority opinion intermingles the federal and state analysis and fails to make clear the principles governing each. Section V contains neither an exploration of the distinct content and meaning of the federal and state provisions regarding cruel and unusual punishment [1] nor a reasoned conclusion that no distinctions exist. An examination of the briefs discloses that no attempt was made by counsel to illumine the state constitutional law questions beyond mechanical reliance on federal precedents. Under those circumstances, we should either require supplemental briefing, give the questions full treatment *sua sponte,* or decline to treat them at all; but in any event we should be clear and explicit about the course we undertake in developing principles of state constitutional law. Otherwise, we abdicate our responsibility to articulate the meaning of our own constitutional provisions and simply "march lock-step with interpretation given to ... the United States Constitution." *State v. Jackson,* Mont., 672 P.2d 255 (1983) (Shea, J., dissenting).

ZIMMERMAN, J., concurs.

1. This question has apparently never been addressed by this Court, although the structure of the opinion in *Davis v. Walton,* 74 Utah 80, 276 P. 921 (1929), suggests that the state and federal provisions do require separate analysis.